HARRY M. STOKELY, WELLS R. STOKELY, HATTIE N. STOKELY, *et al.*, *Appellants*, v. MARY B. CONNER, CAROLINE C. CHAPMAN, SALLIE E. CONNER, *et al.*, *Appellees.*

Opinion Filed April 20, 1915.

PARTITION—OBJECTION TO EVIDENCE MUST BE SEASONABLY MADE—ADVERSE POSSESSION AS BETWEEN TENANTS IN COMMON—APPELLATE PRACTICE—BURDEN IS ON APPELLANT TO MAKE ERROR AFFIRMATIVELY APPEAR.

1. Where a sheriff's deed made in pursuance of a sale of land under a judgment and execution is admitted in evidence without any objection on the ground that the judgment and execution under which it was made must first be introduced to make it admissible; *Held*: That by their failure to object on this ground to the introduction of said deed the defendants must be held to have waived the objection and to have consented to its admission in evidence with all the probative force of which as such, it, upon its face, purported to possess.

2. The general rule is that the seisin or the possession of one tenant in common is deemed to be the possession of all. But if one ousts the other, or denies his tenure, his possession becomes adverse, or if the circumstances show an intent on his part to hold adversely. But a tenant in common, to show

an ouster of his co-tenant, must show acts of possession inconsistent with and exclusive of the rights of such co-tenant, and such as would amount to an ouster as between landlord and tenant, and knowledge on the part of his co-tenant, of his claim of exclusive ownership.    He has the right to assume that the possession of his co-tenant is his possession, until informed to the contrary, either by express notice, or by acts and declarations that may be equivalent to notice. Exclusive possession by one tenant in common, and receipt of the rents and profits of the common land, for a great length of time, is not sufficient to create a legal presumption of the actual ouster of a co-tenant.    Where the proofs show that the land in controversy is a large tract of wild, unimproved and unoccupied land, and that the defendant co-tenants or their lessees have boxed most of the pine trees on it and collected therefrom the naval stores products; *Held*:    That this alone does not amount to an ouster of their co-tenants in the absence of any act or declaration brought home to their knowledge of an intention to deny their rights as tenants in common, and to claim the whole tract adversely.

3.  The burden is upon an appellant complaining in an appellate court of alleged error, to make such error clearly and affirmatively to appear.    The presumptions are always in favor of the correctness of the rulings and orders of the court below, and this presumption holds until the contrary is clearly and affirmatively made to appear.    Under the rules governing here for the preparation of transcripts of record on appeal, it is not necessary to bring up in such transcript the entire record below, but only such parts thereof as may be directed to be incorporated therein by the written demands of the respective parties.    Therefore the absence from a transcript of record of any evidence of this or that necessary step or action having been taken in the court below in a cause is not affirmative evidence to the appellate court that such necessary step or action was not in fact taken therein.

Appeal from Circuit Court for St. Johns County; Geo. Couper Gibbs, Judge.

Decree affirmed.

## STATEMENT.

The appellees filed their bill in equity in the Circuit Court of St. Johns County against the appellants alleging and praying therein as follows:

"Your orators, Mary B. Conner, Caroline C. Chapman, Sallie E. Conner, Julia C. Conner, Mary E. Conner, Nannie C. Young, Arthur R. Young, Caroline Conner and Henry W. Conner, all of the City of Charleston, State of South Carolina, bring this their Bill of complaint against Harry M. Stokely, Wells R. Stokely, and W. Z. Haymans of the County of St. Johns and State of Florida, J. C. Little of Duval County, State of Florida and the heirs and legal representatives of Josiah Campbell, deceased, late of the City of Sherman, State of Texas, whose names are to your orators unknown; and the heirs and legal representatives of Oliver Palmes and George F. Palmes, both deceased, late of Savannah, Georgia, whose names are to your orators unknown. And thereupon your Orators complain and say: .

First, That Henry W. Conner, deceased, late of Charleston, South Carolina, in his life time and at his death was the owner and well seized of the undivided one-half of the grant which has been confirmed by the United States to Pedro Miranda and by the authority of the United States surveyed as Sections Fifty-five, Sixty, Sixty-one, Sixty-two, and Sixty-three (55-60-61-62-63), of Township Four (4) South of Range Twenty-nine (29) East, aggregating One Thousand and 26-100 (1000.26) acres that said Henry W. Conner derived title to said lands under and by virtue of a certain deed of conveyance executed by Joseph A. Strischka, Coroner of St. Johns County upon a sale under execution from a court having jurisdiction, upon a judg-

ment duly rendered by a competent court having jurisdiction of the subject matter and of the defendant, against Joseph S. Sanchez, who was the Sheriff of said St. Johns County, at the date of said sale and conveyance to said Henry W. Conner; said deed is dated January 4th, 1847, and the same was duly recorded in the public records of said county on April 4th, 1847, in Deed Book 'P' page 121, a copy whereof is hereto attached marked Exhibit 'A,' and made a part hereof to the same extent as if here fully set out at length.    That Joseph S. Sanchez at the date of said sale and conveyance was the owner and well seized of an undivided one-half of said grant of land by deed of conveyance from said Pedro Miranda, dated September 17th, A. D. 1828, duly recorded in said public records June 16th, 1829, in Deed Book 'H,' page 279, a copy whereof is hitherto attached marked Exhibit 'B', and made a part of this Bill as fully as if herein set out at length.

That said grant of land is recited in the proceedings for its confirmation by the United States to have been made to Joseph S. Sanchez January 2nd, A. D. 1816, by the lawful authorities of Spain, and to have been by said Joseph S. Sanchez conveyed to said Peter Miranda by deed dated April 15, 1823; that said deed to said tract of land which is therein called Blides Old Field, has been duly recorded in the public records of St. Johns County in Deed Book 'A.A.' page 169 on the day of its date; that in the said deed from Peter Miranda to said Joseph S. Sanchez, dated September 17th, 1828, of the undivided one-half interest in said tract of land, the same is identified as the tract known as Blides' Old Field; that on the 12th of April, A. D. 1829, the said Pedro Miranda conveyed the other undivided one-half of said grant to one Rufina Miranda, recited in said deed to be a daughter of

said Peter Miranda, and as your orators are advised by the public records and believe, said Rufina Miranda died seized of the other one-half interest in said tract of land; that in the proceedings for confirmation and in all of the above recited deeds said grant of land is described as containing One Thousand acres, and your orators say said grant, the undivided half whereof was conveyed to their ancestors, Henry W. Conner, does contain One Thousand and 26-100 acres of land. .

Second; That Harry M. Stokely is the son of Wells R. Stokely. That on or about A. D. 1861 said Henry W. Conner died testate and by a will duly executed to pass title to real property in Florida, devised his undivided half interest in the tract of land in suit to his son, Henry W. Conner, his son, James Conner, his Daughter, Caroline C. Conner, and his daughter, Elizabeth L. Conner, in equal shares; that Henry W. Conner, the son, died testate about A. D. 1907, and by his last will duly executed to pass real estate in Florida, devised his interest in the tract of land in suit to the complainant, Mary B. Conner, his widow; who took and holds titles to an undivided one-eighth of said tract of land in suit;

That James Conner died testate about A. D. 1883 and by his last will duly executed to pass title to real estate in Florida, devised his interest to the tract of land in suit to the complainants, Sallie E. Conner, his widow, and Julia C. Conner, Mary E. Conner, Nannie C. Young, Caroline Conner and Henry W. Conner, his children, in equal shares, and each of said six last named complainants took and hold title to an undivided one-sixth of one-fourth of one-half of said tract of land. That Caroline C. Conner married one Chapman, who is now dead, and she is the

complainant, Caroline C. Chapman; that Elizabeth L. Conner married one Studenmayer, and died about A. D. 1884, intestate leaving lawful issue, a son Louis R. Studenmayer, her sole heir at law; that said Louis R. Studenmayer has since died intestate, by reason whereof the title to one-fourth of one-half, or one-eighth of said tract of land descends to the complainants, and is now held by the complainants in the shares as follows; namely to Henry W. Conner, Mary E. Conner, Julia C. Conner, Caroline Conner and Nannie C. Young each one-fifth of one-third of one-fourth of one undivided half of said tract of land; To Caroline C. Chapman one-third of one-fourth of one-half of said tract of land; to Mary B. Conner One-Third of One-Fourth of One-Half of said tract of land;

That the heirs and legal representatives of Josiah Campbell, deceased, are to your orators unknown. That about ten years ago some of the descendants of said Josiah Campbell lived at or near Sherman, State of Texas. That the heirs and legal representatives of Oliver Palmes deceased and George F. Palmes deceasd, are to your orators unknown; that the proceedings for confirmation of the grant known as the Palmes Grant show that on A. D. 1825 Oliver Palmes and George F. Palmes resided in Savannah, State of Georgia.

Third; That said Pedro Miranda Grant was originally surveyed by the United States in A. D. 1834, and resurveyed by the same authority in A. D. 1850. That as so surveyed said Pedro Miranda Grant overlaps the grant to William Travers, the overlaping parts within this grant being designated as Section 60, containing Twenty-two and .04-100 acres; Section 61, containing Thirty-two and 13-100 acres, and Section 62, containing Sixteen and 53-100 acres; all of Township 4 South of Range 29 East. That

27—Vol. 69.

the grant to William Travers appears by the recitals for its confirmation, contained in the American State Papers to have been made June 4th, A. D. 1798, but your orators say they have the better title to said interfering tracts of land lying within the bounds of both of said grants and claim, seizin and ownership of the undivided one-half of the full One Thousand acres granted to said Joseph S. Sanchez, and by him conveyed to said Pedro Miranda as hereinbefore set out. That within the bounds of said Pedro Miranda grant the United States authorities have surveyed nearly the whole of the grant to G. and O. Palmes; that said grant contains Two Hundred and Thirty one and 82-100 acres; that as surveyed, Two Hundred and fifteen and 16-100 acres of the same lie wholly within the bounds of said Pedro Miranda Grant, being respectively designated at Section Sixty-three, Township Four, South of Range Twenty-nine, containing One hundred and ninety-three and 12-100 acres and Section Sixty, Township Four, South of Range Twenty-nine, containing Twenty-two and .04-100 acres. That said grant to G. and O. Palmes is a junior grant to said Pedro Miranda Grant, the proceedings for its confirmation reciting it to have been made, February 15th, A. D. 1816, and your orators say their title to the undivided one half of all of said lands surveyed within the bounds of the Pedro Miranda grant is superior and better than that of any other person and your orators say that they are well seized and owners of the one half undivided interest of all the lands in the Pedro Miranda grant, overlaping the lands therein surveyed as the grant to G. and O. Palmes, or sections 60 and 63 of Township 4 S. Range 29 East, aggregating 215.15 acres, all of which lie within the true boundary of the Pedro Miranda Grant. That according to the public rec-

ords of St. Johns County the grantees of said Palmes Grant have never made any conveyance thereof and said original grantees are dead as your orators advise and believe; that your orators believe that the heirs, and legal representatives of said George F. Palmes and Oliver Palmes are interested in the property involved in this suit; that their names are unknown to your orators and their interests are subordinate to the rights of your orators.

That of the Pedro Miranda grant as surveyed by the United States there are only 736.44 acres free from the overlapping grants as above described, and that more than 200 acres of the best part of your orators said land is covered by the G. and O. Palmes grant as the same has been surveyed. A plat of the official survey of said Pedro Miranda grant showing its interference is hereto attached and made a part of this bill of complaint to the same extent as if here set out the same being marked Exhibit 'C.'

Fourth; That about December, A. D. 1904, the defendant Wells R. Stokely, under the name of W. R. Stokely, with the fraudulent intent to cloud your orator's title, took a quit claim deed from one Charles P. Stradley, for Sections 60, 62 and 63 of Township 4, South of Range 29, East, and caused said deed to be recorded in the public records of St. Johns County on or about the 26th day of July, A. D. 1905. Your orators say that said Charles P. Stradley, never had any right, title or interest, nor any color of right, title or interest in said Sections 60, 62 and 63 or in your orators said land, or in any land surveyed as within the Pedro Miranda grant, so by him quit claimed to said defendant, and at the date of said deed and at all times before and since said Charles P. Stradley was an absolute stranger thereto and that said quit claim

deed is part of a fraudulent scheme of the defendant, Wells R. Stokely, to make a paper title in himself or in his co-defendant Harry M. Stokely, his son, to the lands described in said quit claim deed from said Charles P. Stradley, and that the same is a fraud upon your orators and a cloud upon their title to the undivided one-half of the Pedro Miranda grant; that from the public records, your orators are informed and on information and belief allege that one Josiah Campbell of the city of Sherman, State of Texas, was the owner and died about 1895 seized of the William Travers Grant, and that the unknown heirs or devisees of said Josiah Campbell claim some right or interest in those parts of said William Travers grant which overlap the Miranda Grant.

Five; That about the middle of February, A. D. 1905, the defendant Wells R. Stokely, in the name of his wife H. N. Stokely, obtained five several conveyances from respectively Rufina E. Freeborn, widow, Cyrus Bisbee, Melanie Bisbee, Charles R. Bisbee and William A. Bisbee, of their several interests in the Pedro Miranda grant; that said deeds are in the same form, contain no covenants of seizin, or warranty, and purport to convey each grantors one-fifth interest in said Pedro Miranda grant, and each contain a recitation that the grantor is an heir to the one fifth of the land described in said deed.

Your orators are advised that the several grantors named are or claim to be the heirs-at-law or devisees of Rufina Miranda, daughter of Pedro Miranda, and your orators say that said Rufina Miranda during her life and after her death, her heirs and devisees were tenants in common with your orators and with their ancestor Henry W. Connor, and that the respective share and part claimed

by their said ancestor and by your orators jointly is and always has been the one half undivided share, and the share and part of said tract of land claimed by said Rufina Miranda in her life time and by the said Rufina E. Freeborn, Cyrus Bisbee, Melanie Bisbee, Charles R. Bisbee and William A. Bisbee as her heirs at law has been and was up to and at the time of said several deeds of conveyance to H. N. Stokely, the undivided one half part or share of said Pedro Miranda Grant and no more, each of said last named persons claiming the one fifth of the undivided one-half of said tract of land.

Sixth; Your orators on information and belief say that said several deeds were all prepared by said defendant Wells R. Stokely, and were on their face by said defendant intended severally to make out and convey to said H. N. Stokely a greater interest or share than the one half of said grant, but your orators on information and belief say that the several grantors in said several deeds never intended to convey more than the one fifth share of the undivided half of said grant; that said several grantors for years paid taxes on the undivided half of said grant and recognized your orators as the owners of the remaining half thereof, and that if said several deeds purport to convey each more than the one fifth of the undivided one half of the Pedro Miranda grant, they are, and each of them is, fraudulent and void as to all and any greater interest than the one fifth of said one half.

Seventh; That about July, A. D. 1906, the defendant Harry M. Stokely acquired a tax deed for the undivided one half interest in said Pedro Miranda grant; that said tax deed was issued upon tax certificate No. 58, for the unpaid taxes for the year A. D. 1903, upon an assessment

of said undivided one half interest as the property of 'Miss M. J. Bisbee' upon three hundred and sixty-eight acres more or less of said grant; and the said defendant had said tax deed recorded in the public records of St. Johns County in deed book 12, page 262, on the 24th day of August, A. D. 1906.

Your orators say that said tax deed and the sale whereon the same was based are without any validity on account of the flagrant illegality of the preliminary proceedings had in the assessment of said tax attempted to be enforced by said sale and the methods of enforcing such tax by sale, but if said tax deed has any validity whatever, which your orators deny, its effect is confined to the undivided one half share or interest in said Pedro Miranda grant which said Rufina Miranda died seized of and which said Melanie Bisbee and her brothers and sisters derived or claimed to derive title to through and under said Rufina Miranda, and that said deed in no way affects the title of your orators to their undivided one-half of said tract of land; but your orators say that said deed as worded and recorded in the public records, casts a cloud upon the title of your orators which should be removed by decree of this Honorable Court in the partition of said lands as hereinafter by your orators prayed.

Eight; That the defendant, Wells R. Stokely, has made a lease of his right or interest in said Pedro Miranda grant, whatever the same may be, if any, for a term of years, which lease is now held by the defendants, W. Z. Haymans and J. C. Little and your orators are advised that said defendants, W. Z. Haymans and J. C. Little claim some right or interest in the said tract of land owned in common by your orators and said defendant

Harry M. Stokely, that such right and interest is claimed through or under said Harry M. Stokely, said Wells R. Stokely, or his wife, H. N. Stokely, but the precise nature and extent thereof is to your orators unknown.

Nine; That there are no persons owners of or interested in said tract of land other than your orators and the defendants named in this bill, and there exist no specific liens or encumbrances thereon known to your orators; that your orators desire a partition or division to be made of said Pedro Miranda grant containing One Thou sand and 27-100 acres, of land, that there may be set off to your orators jointly the one half part of said tract of land, and to the other defendants as their interests may appear, the other one half part of said Pedro Miranda grant; that as incidental to this partition this court will determine the title to the overlapping and interfering parts of said Pedro Miranda grant, and will decree that the tax deed issued by the State of Florida, to Harry M. Stokely, recorded in deed book 12 page 262, of the public records of St. Johns County, in no way covers nor affects the lands to be set apart to your orators; that if said tract of land cannot be divided without great prejudice to the owners thereof then that the same may be decreed to be sold and the proceeds thereof divided among the owners thereof according to their respective rights and interests and according to the statute in such case made and provided.

Tenth; In consideration whereof and to the end therefore that the said defendants may if they can show why your orators should not have the relief hereby prayed and may upon their several and respective oaths and according to the best and utmost of their respective knowledge

remembrance and belief and information, full, true, direct and perfect answer make to each of the several interrogations hereinafter numbered and set forth as by the note hereinafter written they are respectively required to answer, that is to say;

(1.) Whether the defendants W. Z. Haymans and J. C. Little or either of them have received any permit or authority to, occupy the Pedro Miranda grant, sections 55, 60, 61, 62 and 63 of Township 4, South of Range 29, East, or any part of said above described tract of land or any of said enumerated sections of land, if so from whom the same was obtained, for what consideration, to whom and when paid or given, for what portion of said tract of land said occupancy has been permitted and for how long a term, stating its beginning and ending.

(2.) Whether any person has been permitted to cut or box the pine trees on said land for turpentine, or any of them, if so who and by whose authority and whether such permit includes more than one half the land, if so how much more.

3. Whether the defendants W. Z. Haymans and J. C. Little or either of them have occupied or are now occupying any part of said land, and whether when they first occupied any part of said tract of land, any trees or timber had been lately cut or removed therefrom or any trees boxed or cut for the taking of sap or gum, if so, how many and from what part or parts of said land and how much thereof.

(4.) Whether said defendants W. Z. Haymans and J. C. Little have removed, are removing or intend to remove any part of the timber on said tract of land, or any sap or

gum from the live trees thereon, and if so by what authority, and from how much of said tract such removal has been made and from how much they or either of them intends or expects to remove any timber or to take any sap or gum from the live trees.

(5.)  Whether the trees or any part of said tract of land have been boxed for turpentine, and if so upon how much of said tract of land have the trees been boxed for turpentine and the time or times when such boxing was done, by whom and under what authority and how many boxes have been cut on said tract of land.

(6.)  If you hold any permit to occupy any part of said land what evidence of the authority of the person granting such permit did you require before beginning your occupancy?

(7.)  Was any of the palmetto timber used for bridge building by the County Commissioners of St. Johns County or under their authority since A. D. 1905, cut from the Pedro Miranda grant and if so by whose authority was such timber cut?

(8.)  What right, title or interest or color of right in the sections 60, 62 and 63 of Township 4 South of Range 29 East did Charles P. Stradley have or claim to have on or prior to December 16th, A. D. 1904?

(9.)  Had Charles P. Stradley ever possessed any paper title or ever had any occupancy or ever made any claim to any right, title or interest in either Sections 60, 62 or 63 of Township 4 South of Range 29 East, before you applied to him to make to you a quit-claim deed of the lands embraced therein, if so when, where and to whom did he make any such claim?

(10.)    What representations did you make to Charles P. Stradley as to the record title of either Sections 60, 62 or 63 of Township 4 South of Range 29 East?

(11.)    What consideration did Charles P. Stradley receive for executing to you the quit-claim deed filed July 26, A. D. 1905, and recorded in deed book 10 on page 160, public records of St. Johns County?

(12.)    How much money have you received for turpentine permit or permits, lease or leases, or the sale of timber or sap or gum or the right to occupy for turpentine purposes any part of the Pedro Miranda grant or any part of Sections 55, 60, 61, 62 and 63 of Township 4, South of Range 29 East, or for any partnership interest in said lands or its products?

(13.)    What sum of money did you receive from John S. Bennet for timber or turpentine permits or for any land or timber lease covering Sections 55, 60, 61, 62 or 63, Township 4 South of Range 29 East, or any of said sections or any partnership interest therein?

(14.)    Did you receive any part of the money paid by John S. Bennet upon the judgment recovered against him in the Circuit Court of Florida for St. Johns County by Stokely, if so how much?

(15.)    Was said judgment recovered against said John S. Bennet on a suit for the consideration or purchase price or for the lease of lands or any right to use said lands which included Sections 55, 60, 61, 62 and 63, of Township 4 South of Range 29 East or either of them or any part of either of said sections?

(16.)    Who drew the several deeds executed to H. N.

Stokely by Rufina E. Freeborn, Cyrus Bisbee, Melanie Bisbee, Charles R. Bisbee and William A. Bisbee, and under whose direction were the said several deeds drawn?

(17.)   What was your purpose or object or intent in having the draughtsman of said deeds recite in each of said deeds that the grantor was heir to one fifth of Section 55, Township 4, South of Range 29 East, known as the Pedro Miranda grant?

(18.)   Had any of the persons named in the 16th interrogatory ever set up or claimed a greater interest in the Pedro Miranda grant in Township 4 South of Range 29 East than the title or interest which the public records show was taken and held by the said Rufina Miranda under the deed from Peter Miranda made to her about A. D. 1829, if so to whom had they or either of them made such claim, and at what time or times, and in what manner?

(19.)   Is or is not Exhibit 'A' attached to this bill a true copy of the deed of conveyance from Joseph A. Strischka, Coroner, to Harry W. Conner as the same appears upon the public records of St. Johns County in deed book 'P' page 121?

(20.)   Is or is not Exhibit 'B' attached to this bill a true copy of the deed of conveyance from Pedro or Peter Miranda to Joseph S. Sanchez, as the same appears on the public records of St. Johns County in deed Book 'H' page 279?

(21.)   From what source and under whom did Rufina E. Freeborn, Cyrus Bisbee, Melanie Bisbee, Charles R. Bisbee and William A. Bisbee at the date of their several deeds to H. N. Stokely, claim to derive their several

interests and rights in the Pedro Miranda grant in Township 4, S. R. 29 E.

(22.)	From what source and under whom did Charles P. Stradley at the date of his quit-claim deed to you of Sections 60, 62 and 63 of T. 4 South of Range 29 East claim to have derived any title or right or interest in either of said above named tracts of land, or any right or authority to make a deed of them or either of them?

And may full, true and perfect answer make upon their several respective corporal oaths to all and singular the allegations of this bill, to the best of their and each of their knowledge, information and belief as fully and particularly as if the same were here again repeated and they thereto particularly interrogated. That your orators may have discovery; that if it shall appear that the defendants, or any of them have removed any timber or trees from said tract of land, or have cut or boxed any of the live trees thereon, for the purpose of gathering or removing the sap of said trees, that this court through a Master ascertain the facts and if such removal of trees has been in the excess of the right of your orators co-tenant or co-tenants, that your orators may have their damages found and decreed. And if the live trees have been cut or boxed and the sap removed therefrom, from more than one-half of said tract of land, this court may determine whether said boxing of trees and removal of the sap therefrom without the consent of your orators, or some of them, is not a destruction of the freehold, and waste, and a wrong upon your orators, and whether your orators are not entitled to damages as well as mesne profits made by their co-tenant or co-tenants from said tract of land and an injunction to stay further injury and destruction and waste by said co-tenant or co-tenants, or

any person or persons holding under or claiming under them or any of them.

That an account may be taken of the rents and profits of said lands received by your orators co-tenant or co-tenants; that the nature of the deed from Charles P. Stradley to the defendant Wells R. Stokeley and its purpose may be examined into and if the same is found fraudulent the same may be so decreed, and decreed to be void as against your orators; that a like examination be made of the nature and form of the several deeds H. N. Stokely, wife of said defendant Wells R. Stokely, made by Rufina E. Freeborn, Cyrus Bisbee, Melanie Bisbee, Charles R. Bisbee and William A. Bisbee, and if the purpose or form thereof was or is likely to work a wrong upon your orators that such injury be corrected by decree of this court; that a reasonable solicitors fee be allowed your orators in this suit and defendants or the defendant who is your orators co-tenant be decreed to pay the one-half thereof and the costs and charges of this suit or the one-half part thereof, that costs and charges including solicitors fee or the one-half part of said costs and damages and mesne profits be made by this court a lien upon the share of said land owned by your orators co-tenant or co-tenants; that the right and interests of your orator and his co-tenant or co-tenants if more than one, in said tract of land may be ascertained and a partition of said tract of land be decreed by this court according to the statute in such case made and provided.

And your orators further pray that a writ of injunction may be issued out of and under the seal of this Honorable Court if the testimony shall establish that your orators co-tenants or co-tenant or any of them are committing waste, or are otherwise destroying, injuring or mate-

rially lessening the value of said lands, or if the same shall be otherwise established; or if your orators co-tenant or co-tenants shall fail or refuse to satisfy your orators for the use of said lands or for the injury done thereto, directing, commanding, enjoining and restraining the said defendant and each and every of them, from interfering with, injuring or lessening the value of your orators one-half share or interest in said tract of land, and especially from removing the timber therefrom, or injuring the timber thereon; or from appropriating to themselves or to any of said defendants more than rightfully belongs to the owner of the one-half of said lands; and that your orators may have such further, other and different relief in the premises as the nature of his case may require and as shall be agreeable to equity.

And your orators further pray that said injunction may be made perpetual.

It may please your honor to grant your orators due process by subpoena directed to said Harry M. Stokely, Wells R. Stokely, W. Z. Haymans, J. C. Little and an order of publication according to the statute in such case made and provided against the unknown heirs and legal representatives of Josiah Campbell, deceased, and of Oliver Palmes, deceased, and George F. Palmes, deceased, defendants aforesaid, therein and thereby commanding them and each of them to appear herein and answer the several allegations in this your orators bill contained, and further to stand to and abide by such order and decree as may be meet herein."

The defendants, the Stokelys, answered the bill denying the material averments thereof. Replications to these answers were duly filed and a Master to take and report

the evidence was appointed. A large volume of evidence was reported to the court by the Master, and on a final hearing the following decree was rendered: .

"This cause coming on for final hearing upon the bill, and amended bill, answers, replication thereto, and the testimony taken, exhibits thereto and the objections made to the same and having been argued, the court having considered the evidence herein and being fully advised in the premises doth find as follows:

That all the parties to this cause are properly before the court; that the court has jurisdiction of the subject-matter and the parties thereto:

That the exceptions filed at the hearing by complainants in conformity to Rule 18 of the Rules of the Supreme Court to ascertain testimony on behalf of the defendants reported by the Special Master, which testimony objected to is set out in said exceptions filed herein be and the same are hereby overruled because the record fails to show that objections to said testimony were made in limine and noted upon the record.

That of the objections made at the hearing by the defendants to the testimony of complainants and filed herein the objections numbered One and Three (1 & 3) be and the same are hereby sustained, and the objection numbered Two (2) be and the same is hereby overruled.

That the request of the defendants to file an amended answer in said cause be and the same is denied;

That all the material allegations of the bill of complaint are supported by the proofs and the equities are with the complainants:

That the complainants, Mary B. Conner, Caroline C. Chapman, Sallie E. Conner, Julia C. Conner, Mary E. Conner, Nannie C. Young, Caroline Conner and Henry W. Conner are together owners in fee of the undivided one-half interest and estate in the land described in the bill of complaint, to-wit: Sections Fifty-five (55), Sixty (60), Sixty-one (61), Sixty-two (62) and Sixty-three (63), in Township Four (4) South of Range Twenty-nine (29) East, according to the public surveys aggregating One Thousand and twenty-six hundredths acres situate in the County of St. Johns and State of Florida and that the defendant, Hattie N. Stokely is the owner of the other undivided half interest therein, subject to certain lease-hold interests outstanding in the defendants, W. Z. Haymans and J. C. Little at the date of the filling of the bill of complaint and Lis Pendens filed herein:

That said complainants Mary B. Conner, Caroline C. Chapman, Sallie E. Conner, Julia C. Conner, Mary E. Conner, Nannie C. Young, Caroline Conner and Henry W. Conner are entitled to partition of said above described land as in their bill prayed.

That the tax deed set out in the Bill of Complaint taken by the defendant, Harry M. Stokely upon the undivided half interest in said land which has been recorded in the public records of St. Johns County in deed book 12, page 262 in no manner effects the estate or interest of complainants in said tracts of land, and whatever estate or interest may have been conveyed by said tax deed if any, it was not the estate or interest of complainants in the land sought to be partitioned:

That the quit-claim deed to the defendant Wells R. Stokely made by Charles P. Stradley for sections Sixty

(60), Sixty-two (62), and Sixty-three (63), Township Four (4) South of Range Twenty-nine (29) East and recorded in the public records of St. Johns County, Florida, on or about the 25th day of July, A. D. 1905, is and is hereby decreed to be null and void as against the estate and interest of complainants in tracts of land sought to be partitioned herein:

That as to the interfering grants to G. & O. Palmes and to William Travers surveyed by the United States within the bounds of the grant to Pedro Miranda the court makes no finding and leaves the complainants to take such further and other action as they may be advised for getting rid of any claim upon the lands in this bill sought to be partitioned which may or can arise from said United States surveys of said Travers and Palmes Grants.

It is therefore ordered, adjudged and decreed that partition be made of said above described tract of land setting off to the complainants, Mary B. Conner, Caroline C. Chapman, Sallie E. Conner, Julia C. Conner, Mary E. Conner, Nannie C. Young, Caroline Conner and Henry W. Conner, aforesaid together as joint owners, the one-half thereof and to the defendant, Hattie N. Stokely, the other one-half thereof, if the same may be equitably divided and to that end this court doth appoint *David L. Dunham, Robert Ranson* and *M. J. Lopez* to act as commissioners to make partition thereof.

Said Commissioners before entering upon their duties shall be sworn by the clerk of this court or some judicial officer, to faithfully and impartially execute the trust imposed upon them, and shall have power to employ a surveyor or surveyors if necessary for the purpose of making such partition and shall proceed to partition and

divide said tract of land according to the respective rights and estate of said complainants and of said defendant, Hattie N. Stokely, setting apart to said complainants, Mary B. Conner, Caroline C. Chapman, Sallie E. Conner, Julia C. Conner, Mary E. Conner, Nannie C. Young, Caroline Conner and Henry W. Conner, aforesaid together the one-half part thereof and to the defendant, Hattie N. Stokely, the other one-half part thereof, if the same can be done without great prejudice to the owners thereof and if said commissioners find that said partition cannot be made without great prejudice to the owners of the same they shall so report the facts to this court, that further proceedings may be had herein in conformity to law.

The defendant Harry M. Stokely, having no interest in the land sought to be partitioned, the bill is dismissed as to said defendant Harry M. Stokely.

As to the defendants W. Z. Haymans and J. C. Little, against whom a decree pro confesso has been entered it is ordered and decreed that the cause stand open as to said defendants until the final decree made herein.

That the several deeds, to-wit, the deed from William A. Bisbee and Hattie A. Bisbee to E. N. Stokely, dated June 8, 1905, deed from Cyrus C. Bisbee and Maggie E. Bisbee his wife, to H. N. Stokely, dated Feb. 16, 1905, deed from Charles Robiou Bisbee and Marie L. A. Bisbee, his wife, to H. N. Stokely, dated the 16th day of Feb. 1905, deed from Melanie J. Bisbee to H. N. Stokely, dated Feb. 16, 1905, and deed from Rufina E. Freeborn, widow, to H. N. Stokely, dated Feb. 16, 1905, filed in evidence herein and recorded respectively in Deed Book 10, page 124, Deed Book 8, page 481, Deed Book 8, page 564, Deed Book

8, page 482 and Deed Book 8 page 480, of the public records of St. Johns County together conveyed only the undivided one-half interest in the said Pedro Miranda Grant, which one-half interest was the estate and interest held jointly by the said grantors in said deeds.

That inasmuch as it appears from the testimony reported in this cause that the trees upon the said tract of land sought to be partitioned or some of them have been boxed for turpentine by said defendant or her husband, or under lease made by said defendant of the timber on said tract and it is not made to appear that the defendant Hattie N. Stokely was authorized by her co-tenants, the complainants herein, to box the trees upon the lands, or to remove the pitch and gum therefrom, to enable this court to determine the claim made in the bill for damages.

It is further ordered and decreed that this cause be referred to E. N. Calhoun, Esquire, who is hereby appointed Special Master herein to take the testimony and report to this court:

First: Whether the defendant Hattie N. Stokely, or the defendant Wells R. Stokely, or any person or persons claiming under either Hattie N. Stokely or Wells R. Stokely, and if any, who has removed any timber or ties from said tract of land herein decreed to be partitioned or have cut or boxed any of the live trees thereon for the purpose of gathering or removing the sap of said trees, and over what part or extent of said lands the same has been done, and the extent of such removal of timber, if any, and the extent of such boxing and gathering and removing of sap from live trees on said tract of land.

Second: If the trees on said tract of land have been cut

or boxed over a greater part thereof than one-half part thereof, whether the same was done under authority from the defendant, Hattie N. Stokely or the defendant Wells R. Stokely, the time and extent of said boxing, the value and amount of the crude gum and of the turpentine and rosin made therefrom, that has been taken from the trees on said land by said defendant Hattie N. Stokely or under her authority, or the authority of her husband.

Third: That the facts and circumstances of said boxing of trees and the removal of the sap or gum therefrom be fully set forth and reported to this court that the court may determine therefrom whether said acts amount to waste and destruction of the estate and interest of the complainants herein, and if the court shall determine that the defendant Hattie N. Stokely is chargeable with waste and destruction of the estate and interest of the complainants in said lands herein decreed to be partitioned, the court may determine the amount with which said defendant Hattie N. Stokely is chargeable, and be able to make a decree herein as equity requires. In taking said account the Master shall use the pleadings and proofs already taken and such other evidence as the parties may offer.

Fourth: To ascertain and report the costs of this suit up to the time of this report, and to ascertain and report what is a reasonable attorney's fee for complainants' solicitors in his suit.

Done and ordered this 7th day of March, A. D. 1914.

George Couper Gibbs, Judge."

This decree and an order denying an application for a

rehearing made in the cause by the defendants below they have brought here for review by appeal.

*Axtell & Rinehart* and *Hampton & Hampton*, for Appellants.

*W. W. Dewhurst* and *Henry Strom*, for Appellees.

TAYLOR, C. J.—(*after stating the facts.*)—To overturn said decree the appellants seem to reply here mainly upon the three propositions, *viz*: (1) That the appellees have not shown themselves to have any title to the claimed undivided one-half interest in the particular one thousand acres described in the bill. That the undivided one-half interest in a 1000 acre grant shown to have been conveyed by Pedro Miranda to Joseph S. Sanchez and subsequently levied upon and sold under an execution and judgment against said Joseph S. Sanchez and purchased at the sale by the ancestor of the complainants below formed no part of the 1000 acre grant to Pedro Miranda that is described in the bill, but consisted of an entirely different tract. (2.) That the deed made by the Coroner of St. Johns County to the ancestor of the complainants in pursuance of an execution sale under a judgment against Joseph S. Sanchez, he being at the time Sheriff of the County, conveyed no title because no judgment against said Joseph S. Sanchez was shown or proven for the enforcement of which said execution was issued under which said sale was made. (3) That even if the complainants below showed title in themselves they are barred by adverse occupancy and possession for a period of seven years by the defendants below.

As to the first of these contentions we are satisfied upon

a careful consideration of the evidence in the record before us that the land as described in the bill in which the complainants below claim an undivided one-half interest and estate is the same land confirmed by the United States Land Commissioners to Pedro or Peter Miranda and in which Pedro Miranda subsequently conveyed by deed to Joseph S. Sanchez an undivided one-half interest and that this undivided half interest is in the same tract that was subsequently sold as the property of Joseph S. Sanchez by the Coroner of the County to satisfy an execution against him. Some ground for confusion in the description arises out of the fact that in some of the mesne conveyances the names of different parties are given as being the owners of adjoining and bounding tracts, and because some of the ancient mesne conveyances mentioned "Blides Old Field" as being the situs of the tract, and the appellants contend that they have shown "Blides Old Field" to be located only about one and a half or two miles outside of the City of St. Augustine, whereas the land in controversy is situated some eighteen miles North of said city. We will remark in passing that the evidence relied upon by the appellants as locating "Blides Old Field" seems to us to be quite unreliable and at best hearsay. It was deposed by a son of the said Joseph S. Sanchez who related that on one occasion in driving along the road going into St. Augustine his father pointed out a place to him near the road and told him that was what was known as "Blides Old Field", and that the place so pointed out to him was not over two and a half miles from the city. But in spite of these seeming discrepancies in the descriptions given in the different mesne conveyances the fact remains indisputable that there was but one grant confirmed by the United States to Pedro Miranda

situated on the West side of North river with that river as its Eastern boundary, and containing 1000 acres, and that he subsequently conveyed an undivided one half interest in the 1000 acre grant thus confirmed to him to Joseph S. Sanchez, and that the United States Government subsequently had this grant of 1000 acres to Pedro Miranda surveyed locating it in the sections, township and range as alleged in the bill. The said Pedro Miranda subsequently conveying to his daughter Rufina Miranda the remaining undivided one-half interest. The said Rufina subsequently intermarrying with one Bisbee, by whom he had several children, and from these children as the heirs at law of their mother the said Rufina Bisbee the appellants, the Stokelys, have obtained quit-claim deeds so worded as to convey in the aggregate the whole of said 1000 acre grant, but which in law and in fact can convey only such interest as they inherited in said tract, the same being an undivided one-half interest therein.

The second of the above contentions cannot avail the appellants at this time or here, for the reason that said Coroner's deed made in pursuance of a public sale of said land under an execution against Joseph S. Sanchez was admitted in evidence without any objection to the effect that before it became admissible the judgment and execution under which such sale was made, should have been introduced as a predicate for its admission. Had this objection been made and urged at the time the Coroner's deed was offered in evidence, or before the Chancellor, the complainant would have had an opportunity to introduce the missing judgment; but by their failure to object upon this ground they must be held to have waived the objection and to have consented to the admission of the deed with all the probative force of which as such, it, upon

its face, purported to possess.    Simmons v. Spratt, 20 Fla. 495; Sullivan v. Richardson, 33 Fla. 1, 14 South. Rep. 692.

The third contention of the appellants that the decree appealed from is erroneous because the proofs show that the appellants the Stokelys have been in the adverse possession of the lands in dispute for upwards of seven years under a claim of right to the whole tract, and that the appellees are therefore barred by the statute of limitations from maintaining this suit, is likewise untenable. In the first place no such question as the bar of the statute of limitations was raised or presented in the pleadings of the cause, nor does it appear to have been advanced at the hearing before the Chancellor below, but, however this may be, we do not think that the proofs in the cause show such an act of ouster by the Stokelys of their co-tenants the Conners brought home to the knoweldge of the latter as would put in operation in favor of the former the bar of the statute of limitations.    The appellants the Stokelys and the appellees the Conners are shown by the proofs to be tenants in common of the land in dispute. "The general rule is that the seisin or the possession of one tenant in common is deemed to be the possessor of all.    But if one ousts the other, or denies his tenure, his possession becomes adverse, or if the circumstances show an intent on his part to hold adversely.    But a tenant in common, to show an ouster of his co-tenant, must show acts of possession inconsistent with and exclusive of the rights of such co-tenant, and such as would amount to an ouster between landlord and tenant, and knowledge on the part of his co-tenant, of his claim of exclusive ownership.    He has the right to assume that the possession of his co-tenant in his possession, until informed to the

contrary, either by express notice, or by acts and declarations that may be equivalent to notice. Exclusive possession by one tenant in common, and receipt of the rents and profits of the common land, for a great length of time, is not sufficient to create a legal presumption of the actual ouster of a co-tenant." 6 Lawson's Rights, Remedies & Prac., 4439, and authorities there cited. The proofs here show that the land in controversy is a large tract of wild unimproved and unoccupied land. That the Stokelys or their lessees have boxed most of the pine trees on it for naval stores purposes, and collected therefrom the naval stores products, but this alone does not amount to an ouster of their co-tenants in the absence of any act or declaration brought home to their knowledge of an intention to deny their rights as joint tenants and to claim the whole tract adversely.

It is again contended for the appellants that according to the ruling of this court in Benner v. Street, 32 Fla. 274, 13 South. Rep. 407, and in Street v. Benner, 20 Fla. 700, no decree of partition should be made until all the defendants have answered, or until a decree *pro confesso* has been regularly entered against all those who fail to answer, and that the decree appealed from is erroneous because the transcript of record brought here on this appeal does not show that a decree *pro confesso* was entered against the defendants to the bill who failed to answer or plead thereto. We are in perfect accord with the rule of practice laid down in the two cases last above cited. But there is another rule of practice equally binding upon us, and that is that where an appellant comes here complaining of alleged error, the burden is upon him to make the error complained of clearly to appear. The presumptions are always in favor of the correctness of

the rulings and orders of the court below, and this presumption holds until the contrary is clearly and affirmatively made to appear. We take judicial knowledge that under our rules for the preparation of transcripts upon appeal the entire record below is not necessary to be brought up in the transcript, but only such parts thereof as may be directed to be incorporated therein by the written demands of the respective parties. Therefore the absence from a transcript of any evidence of this or that step or action having been taken in the court below in a cause is no evidence to this court that such step or action was not in fact taken therein. Besides this the Chancellor in an order recites the fact that a decree *pro confesso* had been entered in the cause but had been opened up to let in a new party. The appellant has, therefore, failed to make this alleged error affirmatively to appear. The decree appealed from is hereby affirmed at the costs of the appellants.

SHACKLEFORD, COCKRELL, WHITFIELD AND ELLIS, JJ., concur.