213 So.2d 509 (1968)
Mannie P. CHASTEEN, Alpha Jones, C.W. Chasteen, Edward Chasteen, Hilda Mixon and Ernest Chasteen, Appellants,
v.
J.F. CHASTEEN and His Wife, Olga Chasteen, Appellees.
No. J-433.
District Court of Appeal of Florida. First District.
August 20, 1968.
*510 Thomas & Willis, Lake City, for appellants.
Brannon, Brown, Norris, Vocelle & Haley, Lake City, for appellees.
RAWLS, Judge.
Six of the heirs of the late J.R. Chasteen have appealed from a final decree quieting title to 200 acres of land in J.F. Chasteen.
The sole question is whether appellees have acquired title by adverse possession to the homestead property of J.R. Chasteen. No issue has been raised in this court relative to the nonhomestead property involved.
In January 1931 J.R. Chasteen executed two promissory notes to the State Exchange Bank of Lake City for the total sum of $635.00. No security was given for the notes. Chasteen died intestate two months later after making a payment of $83.00 on the notes. He was survived by a widow, seven living adult children and three minor children of a predeceased son. At the time of his death he owned the 200 acres in question and was living on same with his wife, one son, three minor children of a predeceased son, and two daughters-in-law.
There was no administration of the estate, and in July 1932 the Bank petitioned for the sheriff, W.B. Douglas, to be appointed ex-officio administrator of the estate pursuant to Section 5573, Compiled General Laws of 1927. The petition was granted. The Bank sued the sheriff on both notes. Default and final judgments were entered on each. In connection with these cases there were no guardianship proceedings for the minor heirs.
On August 6, 1934, the widow, by written instrument, designated the 160 acres of the farm which she claimed as homestead. On September 3, 1934, by Sheriff's Deed, title to the entire 200 acres (including the 160 designated by the widow as homestead) was deeded to the Bank for $25.00, the sale having been held on the same day.
In 1938 or 1939 one of the heirs, plaintiff-appellee J. Fred Chasteen, negotiated with the Bank to purchase the property. Fred claimed homestead exemption for 1940. In the same year he moved to South Carolina, where he has since resided. In 1942 the Bank gave him a warranty deed. The documentary stamps indicate that the purchase price was approximately $1,000.00. Since that time Fred has made no improvements upon the property other than some fencing which has fallen down and is now in disrepair. He has paid taxes on the property, rented it, sold timber from it three times and collected from the State Road Department for a right of way condemnation.
J.R. Chasteen's widow died in 1949.
Appellee Fred Chasteen testified that he and all his brothers and sisters talked about the deed he purchased from the Bank, and they knew of his claim. Actual knowledge of the deed and Fred's claim thereunder was admitted by his brothers and sisters. When Fred was asked if he talked to the *511 minor children of his deceased brother, he said, "No. I believe the boys were in service at that time." When asked at what time he did tell them, he answered, "I never told them. They knew I had the place and a deed * * * I bought the place directly from the Bank. The children had nothing to do with it."
The only one of the "minors" to testify was John Edward Chasteen who was eight years old when his grandfather died and was nineteen when Fred acquired the deed. John Edward testified that about a year ago his Uncle Fred had asked him to sign a quitclaim deed, but he did not know about Fred's deed from the bank until this suit was brought, and he had never been told that Fred was claiming it as his own. He thought his Uncle Fred and his Uncle Hugh were looking after the property, and it would be divided among the heirs some day.
The lower court found that Fred Chasteen had obtained title to the 200 acres by adverse possession.
As to the homestead property, the Sheriff's Deed to the Bank was void. A homestead is not subject to forced sale for the payment of a judgment against the deceased owner based upon his unsecured notes, since the constitutional exemption inures to the widow and the heirs.[1] At the time the Sheriff's Deed was issued there was on file in the County Judge's office in Re Estate of J.R. Chasteen, a proceeding instituted by the Bank, the widow's designation of the 160-acre homestead. Furthermore, at that same time the widow occupied the property. Both the Bank and the heir, Fred Chasteen, were on notice that 160 acres of the property constituted the family homestead. We conclude that there were no intervening third parties.
It is now well settled that the limitation imposed by Section 95.23, Florida Statutes, F.S.A., would not prevent the heirs from asserting their claim even though the deed from the Bank had been recorded for more than twenty years because that section does not apply to void deeds and does not apply to deeds conveying homestead property.[2]
Generally members of a family cannot acquire adverse possession against each other in the absence of a showing of a clear, positive, and continued disclaimer and disavowal of title, and an assertion of an adverse right brought home to the true owner a sufficient length of time to bar him from asserting his rights. As between members of a family, proof of hostile holding requires unusually clear and convincing evidence. The possession of a tenant in common is presumed to be the possession of all members of the family or all cotenants until the one in possession brings home to the others the knowledge that he claims exclusive ownership and proves facts showing an ouster of the others  that is, acts of possession inconsistent with and exclusive of the rights of the cotenants.[3] The lower court found that the plaintiff, Fred, proved these things and we agree as to the rights of his brothers and sisters, who had actual knowledge of the existence of Fred's 1942 deed, who knew he was claiming through the Bank's title rather than as heir to the property, and who watched him pay the taxes, cut the timber, and rent the premises for over twenty-four years without asserting their claim, although their interest vested in 1931 and ripened in 1949 upon the death of their mother.
However, as to the three heirs of the predeceased brother, the record clearly reveals that they were minors when their grandfather died at which time their reversionary *512 interest vested. The burden was upon Fred to clearly prove their ouster and their knowledge of his adverse claim. He has failed to carry this burden. Fred's proof against his brothers and sisters was supported by their admission that they knew he was claiming under a deed from the Bank, but his only proof against his two nephews and one niece was his self-serving declaration that they knew he had a deed, and this was denied by his nephew, John Edward Chasteen. Furthermore, Fred's overt acts were not, in the absence of actual knowledge of his adverse claim, inconsistent with normal acts of managing and preserving the estate for the heirs. He has made no substantial improvements upon the property, but on the contrary has let the property run down, and there is no showing that the rents and profits were greatly in excess of taxes and cost of management. The acts of one tenant in reaping the profits from the land is insufficient to put a cotenant upon notice of his adverse claim.[4]
The applicable principle was stated by this court in Vaughn v. Vaughn:[5]
"However, where a fiduciary relation does exist, as is the case here between lineal descendants who by operation of law become prima facie jointly vested with title as remaindermen of property that constituted the homestead, the key to the situation always depends on whether the remainderman claiming adversely to his fellow remaindermen has clearly brought home to the latter the fact that he asserts such adverse attitude against what would ordinarily be their common interest.
"In their relations with each other concerning their respective interests in property given to them together, remaindermen are governed by the principles of law governing the respective rights, duties, and liabilities of cotenants generally. The community of interest arising from their co-ownership creates a peculiar relationship of mutual trust and confidence as to the common estate. Arising therefrom are numerous presumptions of the utmost favor to the joint owners designed to insure that the title and rights of each shall be preserved unimpaired, at least to the extent that absent clear notice no direct or indirect assault on the interest of any one owner shall be made by any other."
It might well be that additional proofs can be adduced by appellee as to the three children of the late W.W. Chasteen, and in view of the trial judge's conclusion that the proofs adduced as to them was sufficient, we remand the cause without prejudice to appellee to submit further evidence of his adverse possession against said defendants.
Affirmed in part and reversed in part with leave for further proceedings.
CARROLL, DONALD K., Acting C.J., and JOHNSON, J., concur.
NOTES
[1] Section 2, Article X, Constitution of the State of Florida, F.S.A.
[2] Reed v. Fain, 145 So.2d 858 (Fla.App. 1962).
[3] Stokely v. Connor, 69 Fla. 412, 68 So. 452 (Fla. 1915).
[4] Id.
[5] Vaughn v. Vaughn, 119 So.2d 391, 393, 394 (Fla.App.1st, 1960).