WARNER, J.
A co-tenant of a condominium unit sued the other co-tenant for ouster from the unit. After the trial court denied a motion for directed verdict, a jury found that the co-tenant had been ousted from the unit and awarded $21,000 in damages. The trial court, however, granted a motion for judgment notwithstanding the verdict, finding that there was no evidence of any communication, by the co-tenant in possession to the ousted co-tenant, that the co-tenant in possession claimed exclusive use. The ousted co-tenant appeals. We reverse, concluding that there was evidence sufficient to support the jury verdict.
Although it is usual to begin with a factual background in an opinion, because we must analyze the evidence in light of the law of ouster as well as the standards for granting a judgment notwithstanding the verdict, we begin with a discussion of the legal principles which we must apply to the factual record in this case.
On motion for directed verdict or judgment notwithstanding the verdict the trial court must “evaluate all facts in evidence and all reasonable inferences that can be drawn from those facts in the light most favorable to the non-movant.” Premier Lab Supply, Inc. v. Chemplex Ind., 10 So.3d 202, 205 (Fla. 4th DCA 2009). “ ‘Only where there is no evidence upon which a jury could properly rely, in finding for the plaintiff, should a directed verdict be granted.’ ” Stokes v. Ruttger, 610 So.2d 711, 713 (Fla. 4th DCA 1992) (quoting Collins v. School Bd. of Broward Cnty., 471 So.2d 560, 562 (Fla. 4th DCA 1985)). Review of a ruling on motion for judgment notwithstanding the verdict is de novo. Dorestin v. Hollywood Imports, Inc., 45 So.3d 819, 823 (Fla. 4th DCA 2010). The task of the District Court of Appeal in reviewing the propriety of an order granting a JNOV is identical to that in which an ordinary motion for directed verdict is involved — “ ‘the court must view all of the evidence in a light most favorable to the non-movant, and, in the face of evidence which is at odds or contradictory, all conflicts must be resolved in favor of the party against whom the motion has been made.’ ” Johnson v. Swerdzewski, 935 So.2d 57, 60 (Fla. 1st DCA 2006) (quoting Collins, 471 So.2d at 563).
On the substantive issue, our supreme court determined that a co-tenant must have communicated his or her intention to exclusively possess the property in order to constitute an ouster of the other co-tenant. In Barrow v. Barrow, 527 So.2d 1373, 1376 (Fla.1988), the court, quoting Stokely v. Connor, 69 Fla. 412, 440-41, 68 So. 452, 459 (Fla.1915), defined ouster as follows:
[A] tenant in common, to show an ouster of his cotenant, must show acts of possession inconsistent with, and exclusive of, the rights of such cotenant, and such as would amount to an ouster between landlord and tenant, and knowledge on the part of his cotenant of his claim of exclusive ownership. He has the right to assume that the possession of his cotenant is his possession, until informed to the contrary, either by express notice, or by acts and declarations that may be equivalent to notice.
The court reiterated that holding adversely could not occur unless “ ‘manifested or communicated’ ” to the other co-tenant. Barrow, 527 So.2d at 1375 (quoting Coggan v. Coggan, 239 So.2d 17, 19 (Fla.1970)). Mere possession by one co-tenant, even for a lengthy time, could not be considered an ouster of the other co-tenant without communication of exclusive posses *770 sion. Id. at 1377. The Barrow definition of ouster was read to the jury in this case as part of the jury instructions.
We now review the facts in this case, taken in a light most favorable to the appellant, to determine whether there is any evidence from which a jury could conclude, as they did, that an ouster took place, i.e., that the Andersons, as co-tenants, engaged in acts of possession of the condominium unit inconsistent with and exclusive of the rights of Atkinson, their co-tenant, and communicated these acts to Atkinson. We conclude that there was evidence from which a jury could make that factual finding.
Stephen Atkinson, the plaintiff^appellant, and his family were long-time friends of Deborah and Michael Anderson, the defendants/appellees, and their family. Atkinson, who lived in Orlando, was an avid boater, and the Andersons, who lived in Broward County, spent time with him boating. In 2003, the Andersons suggested to Atkinson that they jointly purchase condominium unit 704 in Port Condominium, a development under construction and on the water in Fort Lauderdale where Atkinson could also have a boat slip. They intended to use the condominium as a vacation home for their respective families, which included use for Atkinson’s five children and for the Andersons’ two children. During the time that they were working on the purchase of unit 704, Michael Anderson, who was in real estate, found that unit 902 in the same complex was also available. The parties also decided to purchase that unit for investment purposes.
Because of the Andersons’ financial difficulties, Deborah Anderson’s mother, Mrs. Boardman, actually signed the purchase agreement and obtained title with Atkinson, as tenants in common, of both units, which finally closed in 2005. Shortly thereafter, Mrs. Boardman quit-claimed her interest in unit 902 to the Andersons. After closing on the units, the Atkinson family and the Anderson family would use unit 704 on alternating weekends. At no time did both families use the condominium together.
' Although unit 902 was bought for resale, no buyers were forthcoming. The Andersons continued to experience financial difficulties and wanted to rent both units. Eventually, tenants were found for a period of time for both units. Unit 704 remained rented through the spring of 2006. When the renter left, Atkinson began using the unit again as a vacation home.
The Andersons’ financial difficulties persisted, and the parties began exchanging proposals for sale of each other’s interests in the units, even though at the time Mrs. Boardman was still the co-tenant of unit 704. They traded emails regarding multiple options, including the rental of the units. In one email to Mr. Anderson, Atkinson reminded him that, “I feel we need to resolve the rental issue, as our original intention was to use this as a weekend holiday place. I am not interested in renting.” (emphasis supplied). Discussions to find a solution and buyout continued for over a year.
Finally, Atkinson flew down to Fort Lauderdale and offered the Andersons cash for their interest in both units. The Andersons refused the tender and told Atkinson that they were moving into unit 704, having sold their residence elsewhere. Atkinson responded, “Well, you can’t move into 704. That’s the condominium that we share.” Feeling that the situation was getting uncomfortable, Atkinson called his attorney. As a result, Atkinson changed the locks on the condominium and sent Mrs. Boardman, who was still the co-tenant, a set of new keys and a letter in which he informed her that he had been threat *771 ened by the Andersons that they would move into the condominium. He let her know that this was not something that he would accept.
Thereafter, Mrs. Boardman’s lawyer wrote Atkinson to inform him that Mrs. Boardman was going to sell her interest and asking him if he wanted to match the price. Atkinson did not, and Mrs. Board-man quit-claimed her interest to the Andersons for an unknown sum. After the purchase, the Andersons sent a letter to Atkinson notifying him that the Anderson family was moving into unit 704. He further wrote, “If you want to use that unit, we will expect you to provide us with reasonable notice, and we believe that 7 days would be the minimum amount of notice. We will be sure to have one of the bedrooms available for your use when you request it.” Atkinson’s family included his wife and five children, and he needed the use of the entire condominium. They had never been required to furnish notice prior to entry into the condominium. These conditions were contrary to their prior use and agreement that the unit was a vacation home, not a permanent residence of either party. Atkinson did not request to use the unit after receiving the letter. Instead, he instituted this lawsuit.
Based upon the foregoing, and in a light most favorable to the appellant, there is evidence which would support the elements of an ouster. The parties were tenants in common in unit 704, and they intended to use the unit for their own vacation purposes, but not for occupancy by both families at the same time. They also agreed to rent it on one occasion to generate income. The unit was not intended to become the permanent residence of either party. After proposals for the sale or swap of each other’s interests in the units failed, Mr. Anderson told Atkinson he was moving into unit 704 with his family, to which Atkinson protested and even changed the locks on the condominium. Nevertheless, Boardman quit-claimed her interest to Anderson, and his family moved into the unit over Atkinson’s objection. Although the Andersons offered to allow Atkinson and his entire family to use one bedroom of the unit, they required seven days notice. Thus, the use they would allow was completely inconsistent with the parties’ prior use and agreement with respect to the unit.
The acts of the Andersons can be construed as inconsistent with the rights of Atkinson and were expressly communicated to him. See Barrow, 527 So.2d 1373. A jury could infer that the permanent residence in the unit by the Andersons was the assertion of exclusive possession, because the Andersons would not allow its use by Atkinson without notice. Further, the Andersons would permit Atkinson to occupy only a bedroom in the unit which they designated. Atkinson’s use was thus transformed to a permissive use. Clearly, the possession by the Andersons was directly and expressly objected to by Atkinson, yet the Andersons went ahead with their permanent possession over that objection. A jury could find that the severe limitations that the Andersons put on Atkinson’s use constituted the assertion of possession to the exclusion of Atkinson, which on this record was what appears to have been intended.
Taking the evidence and all of the inferences which may be drawn therefrom in a light most favorable to Atkinson, as we must, we conclude that there is evidence from which a jury could find that the Andersons had ousted Atkinson from use of unit 704. Thus, the trial court erred in granting the motion for judgment notwithstanding the verdict. We therefore reverse and remand for reinstatement of the *772 verdict and to enter judgment in accordance therewith.

Reversed and remanded with instructions.

POLEN and CONNER, JJ., concur.