512 So.2d 1150 (1987)
Harold J. ADAMS and Lovedia Buresh, Appellants,
v.
T.A. ADAMS, Jr., et al., Appellees.
No. BQ-490.
District Court of Appeal of Florida, First District.
September 24, 1987.
Dale E. Rice, Crestview, for appellants.
T.A. Leonard, Milton, for appellees.
SHIVERS, Judge.
Plaintiffs/appellants Harold J. Adams and Lovedia Buresh appeal the trial court's entry of final judgment in favor of defendants/appellees, T.A. Adams, Jr., his wife, Christine K. Adams, Donald Ray Adams, and his wife, Florella L. Adams, on plaintiffs' action to quiet title. We reverse.
The basis for this action is a dispute over the ownership of 60 acres of a 100-acre parcel of land located in Okaloosa County and known as Government Lot 1. The 100-acre parcel was originally homesteaded, in 1919, by Arie A. Adams, the grandmother of the plaintiffs and defendants in this action. Arie died intestate in 1927 *1151 leaving six children: Magnolia Adams Cutter, Neal Adams, Addies L. Griffith (also known as "Dolly"), T.A. Adams, Sr., Grover Adams, and Oscar Adams. All six of Arie's children were deceased by the time this action was filed, leaving their estates as follows: Magnolia Cutter to her widower, E.E. Cutter and then to his brother, Henry A. Cutter; Neal Adams to his widow, plaintiff Lovedia Buresh; Addies L. Griffith to her nephew, defendant T.A. Adams, Jr.; T.A. Adams, Sr. to his son, defendant T.A. Adams, Jr.; Grover Adams to his daughter, plaintiff Beverly Adams Strickland; and Oscar Adams to his two sons, plaintiff Harold J. Adams and defendant Donald Ray Adams.
Prior to her death, Arie lived on the family homestead located on the 60 acres in question, along with her youngest son, T.A. Sr. and his family. In 1927 she sold and deeded ten acres of the 100-acre parcel to her brother, H.J. Sanders, who thereafter lived there with his family. In 1931, 20 acres were deeded to Oscar by the other five siblings,[1] and in 1932, approximately 10 acres were deeded to Magnolia by the other five siblings. The remaining parcel comprised the 60 acres involved in this appeal.[2]
After Arie's death, T.A. Sr. and his family lived in the family home on the 60 acres until 1932, at which time they moved to Gainesville, Florida. In 1941, the family moved to Pascagoula, Mississippi. After that time, T.A. Sr. began to pay the property taxes on the 60 acres and occasionally traveled to Florida to inspect the property. After T.A. Sr. died in 1977, his son, T.A. Jr., continued to pay the taxes.
Sometime after his father's death, T.A. Jr. decided that he wanted to get the title to the 60 acres "straightened out," being under the impression that the 60 acres had belonged to his father, T.A. Sr. since Arie's death. It was determined that T.A. Jr. would allow the property taxes to go delinquent on the land, then arrange for a third party to buy the land and deed it back to T.A. Jr. In exchange for his assistance, T.A. Jr. agreed to give Donald 20 of the 60 acres. According to schedule, T.A. Jr. ceased to pay the taxes on the property. On June 11, 1979, Wayne Jones (a friend of Donald's) acquired a tax deed to the 60-acre tract with $199.36 supplied to him by Donald. The following day, Jones deeded 40 of the 60 acres to T.A. Jr. and his wife, Christine, and 20 acres to Donald and his wife, Florella.[3]
On February 21, 1984, plaintiffs Harold Adams, Lovedia Buresh, and Beverly Strickland, filed an action to quiet title to the 60-acre parcel or, in the alternative, to enforce a constructive trust against defendants T.A. Jr., Christine Adams, Donald Ray Adams, Florella Adams, and Henry Cutter.[4] Plaintiffs claimed that Arie's interest in the 60 acres had passed by intestacy to her six children and then to their heirs, resulting in a 1/6th interest going to T.A. Jr.; a 1/6th interest to Beverly Strickland; a 1/6th interest to Lovedia Buresh; a 1/6th interest to Henry Cutter; and a 1/12th each interest to Harold Adams and Donald Adams. Plaintiffs then alleged that the tax deed conveying the property to Wayne Jones was void, thereby rendering defendants' claims to the property inferior to those of the plaintiffs. In the alternative, plaintiffs alleged that defendants' purchase of the tax deed through Wayne Jones constituted a breach of their fiduciary duty to *1152 the plaintiffs and that the defendants held the property subject to a constructive trust in favor of the plaintiffs. Defendants answered taking the position that the tax deed was not void, and counterclaimed asserting the statute of limitations and title by adverse possession. After a hearing before the trial court, final judgment was entered in favor of appellees, the court holding that T.A. Adams, Sr. and his heirs had demonstrated adverse possession against the other family members and that the plaintiffs were "estopped" by section 197.552 from bringing an action contesting the validity of the tax deed. We reverse on both grounds.
First, the evidence is insufficient to support a finding that T.A. Sr. and his heirs demonstrated adverse possession of the 60 acres against the other family members. The general rule regarding proof of adverse possession against co-tenants or members of a family is set out in Chasteen v. Chasteen, 213 So.2d 509, 511 (Fla. 1st DCA 1968), as follows:
Generally members of a family cannot acquire adverse possession against each other in the absence of a showing of a clear, positive, and continued disclaimer and disavowal of title, and an assertion of an adverse right brought home to the true owner a sufficient length of time to bar him from asserting his rights. As between members of a family, proof of hostile holding requires unusually clear and convincing evidence. The possession of a tenant in common is presumed to be the possession of all members of the family or all cotenants until the one in possession brings home to the others the knowledge that he claims exclusive ownership and proves facts showing an ouster of the others  that is, acts of possession inconsistent with and exclusive of the rights of the cotenants.
(footnote omitted)
In the Chasteen case, this court held that the plaintiff had established adverse possession as to his brothers and sisters, based on their admission that they knew the plaintiff was claiming possession under a deed from the bank. As to his nieces and nephews, however, the plaintiff failed to establish adverse possession since his only proof was his self-serving statement that they knew that he had a deed, which statement was denied by one of his nephews. More importantly, the court stated that in the absence of actual knowledge of his adverse claim, the plaintiff's "overt acts," (which consisted of paying the taxes, cutting timber, and renting the premises for more than 24 years) were not inconsistent with normal acts of managing and preserving the estate for the heirs. The plaintiff had made no substantial improvements to the property but, to the contrary, had let it run down, and there had been no showing that the rents were greatly in excess of the taxes and costs of management. In the instant case, the appellees failed to prove either ouster or knowledge of an adverse claim by T.A. Sr. and his heirs, or that any substantial improvements were made to the property. In the absence of proof of actual knowledge of the adverse claim, T.A. Sr.'s (and later, Jr.'s) act of paying the taxes and occasionally checking on the property were not inconsistent with normal management and preservation of the estate for the other heirs.
Second, since the tax deed is invalid on its face, the court erred in finding that the plaintiffs were "estopped" by section 197.552. The general rule that applies to the instant case was stated in Spencer v. Spencer, 160 Fla. 749, 36 So.2d 424, 426 (1948) as follows:
When one of several co-owners of property acquires the tax title thereto, his purchase amounts merely to a payment of taxes or a redemption from the sale, and gives him no rights against his associates except insofar as they may fail or refuse to contribute to all expenditures so made. And this rule prevails whether the tax deed was procured to be executed directly to the tenant or to a third person through whom he claims as grantee for it is generally agreed that when the common property has been sold for taxes to a stranger, even though the time for redemption has expired, a tenant in common *1153 cannot by the purchase of such title assert it against his cotenant.
See also Albury v. Gordon, 164 So.2d 549 (Fla. 3d DCA 1964); Johnson v. Johnson, 179 So.2d 112 (Fla. 2d DCA 1965). Since T.A. Jr. and Donald were co-owners of the property through its having passed by intestacy to the original six siblings, their use of Wayne Jones as an agent to purchase the tax certificate amounted merely to a payment of taxes, and resulted in their holding the property subject to a constructive trust in favor of the other co-tenants. Johnson v. Johnson, supra. Assuming the tax deed to be of no effect, neither the provision of section 197.552 stating "no right, interest, or restriction, or other covenant shall survive the issuance of a tax deed," or the statute of limitations provisions of sections 95.191 and 95.192 are applicable.
Accordingly, we reverse the trial court's findings that the plaintiffs were "estopped" from raising the issue of the invalidity of the tax deed and that T.A. Sr. and his heirs took the 60 acres by adverse possession, and find that the property in question passed by intestacy to the six children of Arie Adams, and then to their respective heirs, devisees, grantees, or assigns.
NIMMONS and BARFIELD, JJ., concur.
NOTES
[1] In 1961, Oscar's 20 acres were deeded to Harold and his wife, Delores, and in 1967, Delores deeded her interest in the 20 acres to Harold.
[2] Defendant T.A. Adams, Jr. asserted in his answer to plaintiffs' interrogatories that, along with these transfers, 10 additional acres were given by Neil to T.A. Sr. as an oral gift, and 10 acres were left through Dolly's will to T.A. Jr., and the remaining 40 acres were taken by T.A. Sr. according to his mother's wishes. There was no written documentation of any of these transactions presented at trial.
[3] Florella later quitclaimed her interest in the 20 acres to Donald, and Catherine Adams Cason (T.A. Jr.'s sister) quitclaimed any interest she might have in the 20 acres to Donald and in the 40 acres to T.A. Jr. and Christine.
[4] Defendant Henry A. Cutter was apparently never served with plaintiff's complaint, and was not a party to this appeal. Plaintiff Beverly Strickland elected not to participate as an appellant.