## Beatrice Cooper v. Karen Wenig Cooper, Brian Cooper and Herman Cooper

[783 A.2d 430]

No. 99-421

Present: Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.

Opinion Filed September 21, 2001

*James C. Foley, Jr.,* of *Deppman & Foley, P.C.,* Middlebury, for Plaintiff-Appellant.

*James A. Dumont* of *Dumont & Lee, P.C.,* Middlebury, for Defendant-Appellee.

*Frank H. Langrock* of *Langrock Sperry & Wool, LLP,* Middlebury, for Defendant-Appellant.

**Skoglund, J.** This case, which began as a foreclosure action and which culminated in a jury award to an original mortgagor for emotional distress, lost income and punitive damages, illustrates the fundamental concept that co-tenants to real estate bear fiduciary obligations to each other. We affirm the trial court's decision to grant summary judgment to Karen Wenig in the foreclosure action, and affirm its holding that Herman Cooper committed a breach of fiduciary duty against Karen Wenig, his co-tenant. Further, we affirm the jury award of damages for emotional distress against both Herman Cooper and his wife, Beatrice Cooper, and the punitive damages award against Herman Cooper. We reverse and remand on the issue of Herman Cooper's contribution claim.

## I. Procedural History

The property involved was purchased in April of 1983 by Herman Cooper, his son Brian Cooper and Brian's now ex-wife, Karen Wenig, as joint tenants. In May of 1994, Beatrice Cooper, wife of Herman and mother to Brian, purchased the mortgage on this property and, in July of 1996, instituted foreclosure proceedings against the owners. Karen counterclaimed against Beatrice and cross-claimed against her co-tenants. The trial court granted Karen's motion for summary judgment in the foreclosure action, finding that Herman and Beatrice acted together to purchase the mortgage on behalf of the remaining co-tenants. The court granted partial summary judgment to Karen on her violation of fiduciary duties counterclaim and cross-claims. It found, as a matter of law, that Herman violated his duty to his co-tenant and that, as a matter of law, Beatrice was acting as Herman's agent when she purchased the mortgage. The court also found that Karen and Brian owed to Beatrice and Herman a duty of contribution with respect to the amounts paid by Beatrice and Herman to buy the mortgage, but reserved the contribution claim until after trial on Karen's claim for damages. The matter proceeded to trial on Karen's claim for damages for Herman's breach of fiduciary duty as a result of the commencement of the foreclosure action; on the claim that Beatrice was liable for aiding Herman's breach of fiduciary duty; and on whether Brian had breached his fiduciary duty to Karen. At trial the court directed a verdict in favor of Brian on Karen's claims against him. With respect to Herman, the case went to the jury on damages for emotional distress, lost income and punitive damages. As to Beatrice, the case went to the jury on the issue of her liability for aiding Herman's breach of fiduciary duty and on the emotional distress and lost income damage claim.

As against Herman, the jury awarded Karen $20,000 for emotional distress damages and $239,000 in punitive damages. Karen was awarded $20,000 from Beatrice for her participation in Herman's breach of fiduciary duty and for the emotional harm suffered by Karen. This appeal followed.

On appeal, Beatrice claims that the trial court erred in denying her request for a directed verdict on the claim that she knowingly participated in the breach of Herman's fiduciary duty and in denying her claim for contribution or reimbursement. Herman claims on appeal that the court erred in its summary judgment decision in finding that he breached his fiduciary duty to his co-tenant, Karen, and that the co-

tenant was entitled to a trial on damages. Further, he argues that the trial court erred in instructing the jury on the issue of emotional distress and on punitive damages. Finally, he argues that the trial court erred in deferring to a New York divorce court the question of his right to contribution from his co-tenants.

## II. Ownership and Relational History

A history of the litigants is required to understand the land ownership and contribution issues presented in this case. Brian and Karen were married in the early 1980's. In early 1983, Karen and Brian, who lived in New York City, decided they wanted a second home and located property in Lincoln, Vermont. Herman helped Brian and Karen purchase the Lincoln property by providing a portion of the purchase price. Title to the property was deeded to all three, with Herman having a 50% interest as a joint tenant with rights of survivorship as to Brian and Karen, who held their 50% share as tenants by the entirety.

As part of the purchase, the parties assumed a note and mortgage to the Lomas and Nettleton Company, a mortgage company. Initially Herman paid the monthly mortgage, taxes and expenses associated with the property, but sometime in 1986, Brian commenced making these payments for the three owners.

In 1992, Karen and Brian began divorce proceedings in New York City. At approximately the same time, Brian stopped paying the mortgage on the Lincoln property. In 1993, Cateret Savings Bank, the mortgagee of the Lincoln property as successor in interest to Lomas and Nettleton, commenced foreclosure proceedings on the property. Karen, through her attorney, filed a motion to dismiss the foreclosure action, challenging the validity of the mortgage. Co-tenant Herman consulted with his wife and their attorney about how to respond to the foreclosure action, and it was decided by the three that Beatrice should purchase the mortgage in her name, which she did for $75,000 in May of 1994. The foreclosure action initiated by Cateret terminated. At this time, Herman and their attorney executed a straw transfer, to the effect of converting the joint tenancy to a tenancy in common, thus destroying Karen's right of survivorship in Herman's interest.

Upon learning that Beatrice had purchased the mortgage, Karen, through her attorney, sent two letters to Beatrice's attorney. The first requested information and documentation regarding Beatrice's purchase of the mortgage, and queried as to what claims, if any, were

retained by the previous mortgagee against Karen and the extent of any claims Beatrice had against Herman, Brian and Karen. Karen's second letter, dated three months later, requested a meeting to discuss the property. Karen received no response to either letter. During this period, no demand for payment on the mortgage was made to Karen.

Then, in July 1996, Beatrice notified Herman, Brian and Karen that the mortgage was in default and that the total due on the mortgage, $97,177.70, was due and payable within thirty days. When payment was not forthcoming, Beatrice filed the foreclosure action.

Other facts pertinent to the case will be provided in the decision that follows.

### III. Breach of Fiduciary Duty

We first address Herman's claim that the court erred in granting Karen's motion for partial summary judgment against him and determining that he was liable for damages for a breach of fiduciary duty to his co-tenant because of his participation in the foreclosure action.

On appeal, we review a court's disposition of a summary judgment motion by applying the same standard as the trial court. *Rennie v. State*, 171 Vt. 584, 584, 762 A.2d 1272, 1274 (2000) (mem.). A grant of summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." V.R.C.P. 56(c)(3). "In determining whether material facts exist for trial, we must resolve all reasonable doubts in favor of the party opposing summary judgment." *Rennie*, 171 Vt. at 585, 762 A.2d at 1274.

Herman does not appeal from the court's finding that he and Beatrice acted together in purchasing the mortgage, that he and Beatrice purchased the mortgage on behalf of the co-tenants, and that they are entitled to contribution from Brian and Karen. See *Laura v. Christian*, 537 P.2d 1389, 1391 (N.M. 1975) (where one co-tenant is found to have acted on behalf of the remaining co-tenants, those co-tenants must contribute to the expenses). Herman claims that the purchase of the mortgage by Beatrice and himself was "a benefit to Karen." He argues, however, that the only action attributed to him that the court found to be tortious was the commencement of the foreclosure action, and that the only possible claim available to Karen

with respect to the foreclosure action was one of malicious prosecution, which could not be sustained on the evidence.

However, Herman failed to raise this argument to the trial court in the summary judgment action, and we will not consider it on appeal. See *Lane v. Town of Grafton*, 166 Vt. 148, 153, 689 A.2d 455, 457 (1997) (failure to raise at trial a reason why summary judgment should not be granted precludes raising that issue on appeal). This argument also misconstrues the court's summary judgment ruling, which we address in some detail, as it provides the basis for the trial on damages.

## IV. Fiduciary Duty of Co-Owners

The Restatement (Second) of Torts § 874, comment a (1979) states: "A fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." When a joint tenancy or tenancy in common is created, the co-tenants enter into a fiduciary relationship with each other as to the joint property. See *Adams v. Adams*, 512 So. 2d 1150, 1152 (Fla. Dist. Ct. App. 1987); *Jolley v. Corry*, 671 P.2d 139, 141 (Utah 1983) (special relationship of confidence and trust exists among co-tenants); *Bartz v. Heringer*, 322 N.W.2d 243, 244 (N.D. 1982) (recognizing confidential relationship between co-tenants); *Brown v. Brown*, 563 S.W.2d 444, 446 (Ark. 1978) (fiduciary relationship between co-tenants); *Beers v. Pusey*, 132 A.2d 346, 348 (Pa. 1957) (co-tenant stands in confidential relationship to all co-tenants).

By reason of the common interest that arises from co-ownership, a relationship of mutual trust with respect to the common estate is created. From that close relationship follows a duty on each co-tenant to protect the common title and a duty not to directly or indirectly assault the interest of any one owner. See *Preston v. United States*, 696 F.2d 528, 536 (7th Cir. 1982).

The law on this issue has been clear in Vermont since at least 1866. In that year the Court decided *Administrators of Downer v. Smith*, holding that co-tenants are agents of each other, and that it would violate the co-tenant's duties to his fellow co-tenant to allow him to buy the property at a tax sale and exclude the fellow co-tenant. 38 Vt. 464, 468 (1866). The Court's decision described the fiduciary relationship, stating "[t]he unity of possession, existing in a tenancy in common, would imply that the defendant was in possession of the land,

managing and carrying it on to the best advantage for those interested, and guarding it for himself and his co-tenant against forfeiture." *Id.* at 467. The Court stated further:

> [W]e think it would hardly be denied that the defendant was required to act in good faith so far as his co-tenant was interested. The defendant in making payment of the taxes, might properly be treated as the agent of [his co-tenant] to the extent of [his co-tenant's] share of them, and the law would imply such agency so long as the relation of tenants in common should exist.

*Id.* at 468. The Restatement's definition of a fiduciary relation therefore encompasses Vermont's description of the duties of a co-tenant.

As a result of this peculiar relationship, each co-tenant has a duty to protect and secure the common interest, and neither co-tenant may assume a hostile attitude toward his other co-tenants. "[I]t is not to be tolerated that one shall purchase an encumberance or an outstanding title, and set it up against the rest, for the purpose of depriving them of their interest . . . such a proceeding would be 'repugnant to a sense of refined and accurate justice . . . .' " *Beers*, 132 A.2d at 348. A co-tenant cannot effectuate the same result by using an agent or other person to obtain the interest on the co-tenant's behalf. See *Adams*, 512 So. 2d at 1152 (co-tenant cannot acquire interest in property to exclusion of other co-tenant, even if tax deed was executed directly to co-tenant or to third person whom he claims as grantee).

In *Beers*, a father died intestate leaving his eight children, including William Pusey, his real property on which was owed taxes. At a subsequent public sale, William's wife, Mary, purchased the property. William's brothers and sisters brought an equitable action against William and Mary to quiet title to the property. The court concluded that "[l]aw, equity, and fair dealing all dictate that" "the wife of a tenant in common [may not] buy property of the tenancy at a tax sale and obtain a good title against the other tenants." *Beers*, 132 A.2d at 347. In so doing, the court noted that a tenant in common would not be permitted to acquire an interest in property which is adverse or antagonistic to the remaining co-tenants, and thus concluded that the law should not permit the spouse of a tenant in common to do what the tenant could not. *Id.* at 348. "The basis for [this decision] is that the spouse takes title with knowledge of the facts which makes the

purchase fraudulent as against the other co-owners. This result does not depend on the unity of estate between husband and wife, but upon principles of sound public policy." *Id.* at 349.

Relying on the above principles, and noting that foreclosure actions are equitable proceedings, see *Retrovest Assocs., Inc. v. Bryant*, 153 Vt. 493, 500, 573 A.2d 281, 285 (1990), the court denied Beatrice's motion for summary judgment in the foreclosure action. The court held that the purchase of the mortgage by Herman and Beatrice was on behalf of all the co-owners. To do otherwise, the court reasoned, would be to allow Herman to profit from his own default and to the detriment of his co-tenants, a result equity would not permit.

Finally, because the mortgage was purchased on behalf of Brian and Karen, the court concluded that Herman and Beatrice are entitled to receive contribution from them. See *Laura*, 537 P.2d at 1391 (where one co-tenant is found to have acted on behalf of the remaining co-tenants, those co-tenants must contribute to the expenses within a reasonable time); *Beers*, 132 A.2d at 348-50; *Hardy v. Johnson*, 79 A.2d 500, 501 (N.J. Super. Ct. Ch. Div. 1951); *Toole v. Lawrence*, 14 N.W.2d 607, 611 (Neb. 1944). However, the court declined to order contribution in the summary judgment action, deferring that determination until after Karen's cross-claims and counterclaims had been resolved.

■ Having found that foreclosure was not appropriate, the court next addressed Karen's counterclaim and cross-claim of breach of fiduciary duty, identifying the issue as whether Herman, with the assistance of Beatrice, violated fiduciary duties owed to Karen by directly or indirectly attacking her interest in the jointly owned property. The court found that Herman's admitted involvement in the purchase of the mortgage was but one part of an effort by him to avoid the fiduciary duties he owed to the co-owner. The court found that Herman's actions in utilizing Beatrice to purchase the mortgage in Beatrice's name and his reasons for doing so; Herman's and Beatrice's subsequent failure to respond to Karen's inquiries about the amount due and owed on the mortgage and her liability therefore; the sudden demand for $97,177.70 due and payable in thirty days; and the eventual instigation of the foreclosure action and his stated purpose in the foreclosure (to ensure that Karen is "not rewarded by what she has taught my grandchildren") evidenced a violation of his fiduciary duties as a matter of law. The court found, as a matter of law, that Herman violated his duty to his co-tenant. As the above discussion makes clear, this holding was correct as a matter of law.

Appellant Herman Cooper also claims that the court erred in holding that Karen was entitled to damages as a result of the foreclosure action, again presenting the issue through his limited view of the trial court's decision. He argues that, had the foreclosure been allowed to go forward, the property would have been foreclosed, there would have been a redemption period in which Karen or any owner could have redeemed it, or if none of the co-tenants redeemed the property, it would have been sold at public sale and the proceeds, net the mortgage, would have distributed to the parties in their respective shares. He notes that he could have pursued partition of the property with similar results. Or, he suggests that had he and Beatrice asked for contribution in 1994, after the purchase of the mortgage, and, assuming no contribution was forthcoming, they could then have sought to quiet title or to foreclose on Karen and Brian's interest without breaching any fiduciary duty. Of course, none of these scenarios occurred.

More importantly, Herman ignores the fact that the counterclaim filed against him by Karen was a tort action alleging breach of a fiduciary duty. She sought damages for severe emotional distress, attorney's fees, and financial loss arising from Herman's actions, not just an adjudication of her rights and interests in the Lincoln property.

The court held that one co-tenant who violates his or her fiduciary duties to another co-tenant is liable in tort. This is an accurate statement of the law. See Restatement (Second) of Torts § 874. One is entitled to tort damages for harm caused by the breach of the fiduciary relation. *Id.* cmt. b. Finding it clear as a matter of law that Herman violated his duty to Karen, the court granted Karen's motion for partial summary judgment as to her cross-claim against Herman and allowed her claim for compensatory and punitive damages to go to trial. We find no error in the court's decision.

## V. Emotional Distress and Punitive Damages Claims

Herman next argues that the court erred in submitting the claims for emotional distress and punitive damages to the jury as there was insufficient evidence to support either claim. Karen argues that, while Herman made a motion for judgment pursuant to V.R.C.P. 50 at the close of plaintiff's case where he argued that Karen had not established (1) her claim for lost income damages, (2) a basis for an award for emotional distress, nor (3) proven conduct upon which an award of punitive damages could be based, Herman failed to renew

that motion at the close of all the evidence, and therefore, has waived all objections to the sufficiency of the evidence.

The absence of a motion for judgment "made at the close of all the evidence" forecloses appellate review of the sufficiency of the evidence. V.R.C.P. 50(b). We have held that this rule is and must remain inflexible — "we have construed [Rule 50] strictly," finding waiver of all the sufficiency arguments made at the close of a plaintiff's case if not renewed by another motion at the close of all the evidence. *Ulm v. Ford Motor Co.*, 170 Vt. 281, 284, 750 A.2d 981, 985 (2000); see also *Maynard v. Travelers Ins. Co.*, 149 Vt. 158, 160, 540 A.2d 1032, 1033 (1987). While ascertaining whether there was compliance with formal prerequisites, however, we should not lose sight of the purpose of a Rule 50 motion, that is, to give the nonmoving party an opportunity to cure the defects in proof that might otherwise preclude the case from going to the jury. *Maynard*, 149 Vt. at 162, 540 A.2d at 1034; *Crump v. P & C Food Mkts., Inc.*, 154 Vt. 284, 290, 576 A.2d 441, 445 (1990). While this case presents a murky view of the circumstances surrounding the Rule 50 motion, it is clear that the trial court was afforded the opportunity to properly determine whether sufficient evidence existed for the issues to be decided by the jury, and the nonmoving party was given the opportunity to attempt to rectify any deficiencies in proof.

The record shows that, following the submission of the Rule 50 motion at the close of Karen's case in chief, the court ruled that Karen had presented sufficient evidence as to Herman and Brian on the issue of punitive damages to present the matter to the jury. However, the court ruled that there had not been sufficient evidence as to Beatrice to present the claim of punitive damages to the jury and granted her Rule 50 motion on that issue.[1] At this time, the lawyer representing Brian asked, "And, your Honor, we will be taking up our Rule 50 motions at the end of the case?" to which the court replied, "Yes."

When the evidence closed, the court convened a hearing to address the pending motions filed on behalf of each of the defendants. No written or formal oral renewal of a Rule 50 motion was made. Following a lengthy hearing, during which the court dismissed a claim of abuse of process against Beatrice and dismissed Brian from the

---

[1] Brian and Beatrice also filed Rule 50 motions at the close of Karen's case in chief. Karen suggests that Beatrice failed to renew her motion at the close of evidence and therefore waived any objection to the sufficiency of the evidence. See *infra*, section VII. Our analysis of this issue as to Herman also resolves this issue as to Beatrice.

case, the court took up Herman's challenges to the claims of economic loss and emotional distress. The court ruled that the claim of economic loss would go to the jury.[2] The record does not show a specific ruling by the court on the challenge to the claim for damages due to emotional distress, but it is clear the court decided against Herman and denied his motion, because it submitted the issue to the jury.

As we noted in *Maynard*, federal courts, when presented with a question of Rule 50 preservation, may evaluate the actions of the trial court to determine whether or not the trial court had led the moving party to believe that it had done all that was required of it in order to preserve its motion. *Maynard*, 149 Vt. at 161 n.1, 540 A.2d at 1034 n.1 (citing *Bayamon Thom McAn, Inc. v. Miranda*, 409 F.2d 968 (1st Cir. 1969)). It is apparent that, at the close of evidence, the court held a hearing and considered as before it all the Rule 50 motions for judgment submitted by counsel for Herman, Beatrice and Brian. Notwithstanding the fact that no defendant filed supplemental written motions or spoke magic words of incantation, the court considered the motions viable and acted accordingly.[3] Thus, the actions and efforts of Herman were sufficient to preserve his claims of error.

On review of a motion for judgment as a matter of law, the reviewing court must determine whether the result reached by the jury is sound in law on the evidence produced. *Haynes v. Golub Corp.*, 166 Vt. 228, 233, 692 A.2d 377, 380 (1997). Upon review, this Court must view the evidence in the light most favorable to the nonmoving party. We will uphold the trial court's denial of the motion if any evidence fairly or reasonably supports a lawful theory of the plaintiff. *Id.*

Unfortunately, the motion hearing did not provide clarity for purposes of appellate review. With regard to the claim for emotional distress, the discussion between counsel for Herman and the court centered on what elements were needed to prove emotional distress and what was the requisite "intent" necessary to obtain damages. No argument was made by Herman that the evidence was insufficient to go to a jury. However, counsel for Karen was afforded an opportunity

---

[2] The jury found no lost income. No challenge is made on this issue.

[3] The issue is confused, unfortunately, by a comment made by the judge when he decided the Renewal of Motion for Judgment after Trial, timely submitted by Herman. He denied the motions, but wrote that "[f]or purposes of the motion, the court is assuming that Mr. Cooper made a Rule 50 motion at the close of all the evidence. The court is aware that plaintiff claims that no such motion was made. The court has not reviewed the record to determine this issue."

to review for the court the evidence he believed supported Karen's claim for emotional distress.[4] As noted, the record reveals no direct ruling by the court. So, while the decision on the motion is available for appellate review, the ruling is elusive.

Herman argues that Karen did not establish a basis for awarding emotional distress damages because her claim and her evidence were too speculative and undefined to be considered by the jury and she provided no evidence to link the attempted foreclosure action to any claimed distress. The evidence offered on this issue was as follows. Karen testified that the property was purchased, in part, because of her long involvement in the Lincoln area, for use as a summer home and a studio for her to pursue her relatively successful painting career. She testified about how much she and the two children enjoyed their time there and how much she loved the studio. She testified as to her and the children's adjustment to the pending divorce action and how important the Vermont house was to her sense of stability. In March of 1993, she testified, she was told in a telephone call with Brian that she should not expect to use the Vermont house any longer as it was in foreclosure. She testified about her lack of success in obtaining information from her co-tenants concerning the status of the house and how it affected her ability to return to painting due to the uncertainty regarding the studio's availability and her anxiety surrounding it. She told the jury that she was "totally a wreck" because of the foreclosure action against her studio, that the foreclosure action "scared" her, and that she felt threatened. She testified that the programs her children enjoyed in the summer in Vermont were threatened as well. She testified that after the foreclosure action was begun, she stopped eating for three weeks and that she has anorexic tendencies that are aggravated when she is upset. Finally, she testified that the foreclosure affected her abilities as a mother.

■ The evidence was sufficient to establish causation between Karen's claim of emotional distress with the filing of the foreclosure action filed by Herman and Beatrice. The court's denial of Herman's motion was not error.

---

[4] This exposition was in opposition to Beatrice's motion for judgment as a matter of law on the claim against her for breach of duty of good faith and fair dealing as a mortgagee. That claim was eventually consolidated with the joint tortfeasor claim against Beatrice. While the review by counsel was not directed at Herman's Rule 50 motion, it sufficed to delineate for the court the evidence submitted on the issue of emotional distress.

█ Herman next argues that Karen failed to offer any evidence to demonstrate that his conduct was outrageous, that he acted intentionally or with reckless disregard of the probability of causing emotional distress. See *Sheltra v. Smith*, 136 Vt. 472, 476, 392 A.2d 431, 433 (1978) (recognizing in Vermont the tort of intentional infliction of emotional distress and the four elements necessary to establish the prima facie case: "outrageous conduct, done intentionally or with reckless disregard of the probability of causing emotional distress, resulting in the suffering of extreme emotional distress, actually or proximately caused by the outrageous conduct"). The court ruled that Karen was not required to demonstrate outrageous conduct where the claim was for damages as a result of an intentional act. See *Trepanier v. Getting Organized, Inc.*, 155 Vt. 259, 270-71, 583 A.2d 583, 590 (1990) (recognizing emotional distress damages as a remedy available in claims based on torts other than intentional infliction of emotional distress). Karen was only claiming damages in the form of emotional distress. She did not bring a tort claim against anyone for intentional or negligent infliction of emotional distress. Therefore, Herman's argument has no merit.

## VI. Punitive Damages

Herman claims the court erred in allowing the jury to award punitive damages because the acts upon which the award could be based were undertaken by Herman and Beatrice's attorney. This assertion confuses a claim of error for denying Herman's Rule 50 motion challenging the sufficiency of the evidence on the punitive damages issue, with a challenge to the jury instruction regarding the "reliance on legal advice" defense to punitive damages — a defense we have never recognized. Because the evidence was sufficient to permit the claim for punitive damages to go to the jury, we find no error on that point.

█ In a claim for punitive damages it is not enough to show that defendant's acts are wrongful or unlawful — there must be proof of defendant's "bad spirit and wrong intention." *Agency of Natural Res. v. Riendeau*, 157 Vt. 615, 624-25, 603 A.2d 360, 365 (1991) (citation omitted). "Consistent with the view that punitive damages are to be applied to deter and to punish truly reprehensible conduct, Vermont has long required a plaintiff to demonstrate that a defendant acted with malice in order to recover punitive damages." *Brueckner v.*

*Norwich Univ.*, 169 Vt. 118, 129, 730 A.2d 1086, 1095 (1999) (citations and internal punctuation omitted).

The court below ruled that Karen had sufficient evidence to show the requisite malice on the part of Herman, citing to Herman's statements, given in deposition:

> A: Karen has worked it out that the children hate us, for what reason I do not know, and I'm not going to reward such activity. Remember that. She has done it. The father that they loved desperately is anathema to them now. Why?
>
> Q: And you're pointing your finger at somebody?
>
> A: I'm pointing my finger at Karen, and I will not tolerate it. I'll do everything I can to make sure that she's not rewarded by what she has taught my grandchildren.
>
> Q: And that's the reason for the foreclosure?
>
> A: Absolutely.

He further noted during his deposition that he believed Karen had lied about her background, including whether she had taught art and admitted that he was "checking out everything that I have to satisfy myself that I'm not hurting her unnecessarily."

The evidence showed that it was only after Karen had successfully defeated Brian's two attempts in the divorce action to force a sale of the Vermont property and after she had obtained custody of the two children in the divorce that Beatrice purchased the mortgage. Herman admitted that it was his intention to "hurt" Karen in retaliation for what he felt was her improper treatment of his son Brian, by having his attorney buy the Lincoln mortgage in Beatrice's name and then foreclose on it, and not to obtain any funds due under the mortgage. The evidence showed that Herman and Beatrice were quite wealthy and had no actual need for the money due and owed on the property. Beatrice and Herman did not dispute that for two years they never notified Karen of what she owed and that Herman had actually instructed their lawyer *not* to answer Karen's inquiries about the mortgage. They failed to notify Karen of taxes due and refrained from paying same. They then demanded payment of $95,000 within 30 days to avoid foreclosure, and then they instituted foreclosure. In light of this evidence of Herman's malice, the claim for punitive damages was properly submitted to the jury.

## VII. Jury Instructions

Herman's claim that the court erred in instructing the jury on the defense of "advice of counsel" fails as well. While this Court has not had occasion to recognize the "reliance on counsel" defense to punitive damages, see *Crabbe v. Veve Assocs.*, 150 Vt. 53, 59, 549 A.2d 1045, 1049 (1988), those jurisdictions which do recognize this defense limit it to defendants who have proof they made full disclosure to the lawyer of their agenda, and who act in good faith, with an honest purpose, and without malice. See *Scalise v. Nat'l Util. Serv.*, 120 F.2d 938, 941 (5th Cir. 1941) (advice of counsel is not a defense unless the advice was requested in good faith and client made full disclosure); *Town Ctr. Mgmt. Corp. v. Chavez*, 373 A.2d 238, 245 (D.C. 1977) (prior consultation with attorney is "no more than one factor for the trial judge to consider in determining whether the requisite malice was present" to support award of punitive damages); *Hamilton County Bank v. Hinkle Creek Friends Church*, 478 N.E.2d 689, 691 (Ind. Ct. App. 1985) (advice of counsel may be claimed as defense against imposition of punitive damages when "the evidence shows full disclosure of the situation and good faith reliance on the advice procured, for an honest purpose," but the defense is not absolute). 1 L. Schlueter & K. Redden, Punitive Damages § 5.4(C) (4th ed. 2000), is in agreement with these jurisdictions: "the defendant will be liable if counsel had no knowledge that he intended to act in bad faith. Generally, the defense will not be available if the defendant acted intentionally in a malicious and oppressive manner."

■ The evidence showed that the attorney "had no knowledge that [Herman and Beatrice] intended to act in bad faith." And, the evidence showed that Herman acted in an intentional and "malicious and oppressive manner." The court's instruction on punitive damages included an instruction on the advice of counsel defense which mirrored the aforementioned description. The court instructed the jury as follows:

> The fact that a defendant sought the advice of counsel before acting is relevant to defendant's intent. However, consulting an attorney does not necessarily preclude the award of punitive damages. It is merely one factor to consider in determining whether malice was present and is not a complete defense. For the defense to be available the evidence must show full disclosure of the situation, good faith

reliance on the advice, and an honest purpose. Liability may not be avoided if counsel had no knowledge that the defendant intended to act in bad faith. And this defense will not be available if the defendant had ill feelings for the plaintiff and acted intentionally in a malicious and oppressive manner even if he or she acted on the advice of counsel.

The court accurately instructed the jury on the advice of counsel defense, and therefore Herman's claim of error is without merit.

## VIII. Aiding in a Breach of Fiduciary Duty

At the summary judgment level in the foreclosure action, the court denied Karen's motion for partial summary judgment against Beatrice because it could not conclude, due to disputed material facts, that Beatrice knowingly assisted Herman in violating his duties to his co-tenant, Karen. This counterclaim then went to trial. Beatrice filed a motion for judgment as a matter of law at the close of Karen's case in chief seeking dismissal of all claims. The court granted her motion as to the claim for punitive damages, but deferred ruling on the issue of her liability for aiding Herman in his breach of fiduciary duty as to Karen and the claim for damages for emotional distress until close of trial. Karen claims that Beatrice has waived any challenge to the sufficiency of evidence because she failed to renew her motion at the close of evidence. As we held for Herman, so too do we find that, given the totality of the circumstances, Beatrice has preserved her right to appeal from the court's denial of her Rule 50 motion.

" 'Any one who knowingly participates with a fiduciary in a breach of trust is liable for the full amount of the damage caused thereby . . . .' " *S & K Sales Co. v. Nike, Inc.*, 816 F.2d 843, 848 (2d Cir. 1987) (quoting *Wechsler v. Bowman*, 34 N.E.2d 322, 326 (N.Y. 1941)); see also Restatement (Second) of Torts § 874 cmt. c ("A person who knowingly assists a fiduciary in committing a breach of trust is himself guilty of tortious conduct and is subject to liability for the harm thereby caused."). The necessary elements to support a claim of assisting in the breach of a fiduciary duty are: (1) a breach by the fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that the plaintiff suffered damage as a result of the breach. *S & K Sales*, 816 F.2d at 847-48. The claimant need not prove intent on the part of the defendant to injure the party owed the duty by the fiduciary. *Id.* at 848 (contrasting

Restatement approach under § 874 cmt. c, attaching liability for "knowingly assisting" breach of fiduciary duty, to approach taken under § 876(b), which deems third party liable in tort for persons acting in concert, when assistant "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself"). "[T]he gravamen of the claim of participation in a breach of fiduciary duty is the 'knowing participation' of the third party in the fiduciary's breach of trust." *Id.* (citations omitted).

The case against Beatrice was not that she committed an independent tort against Karen, but that she knowingly participated in Herman's breach of fiduciary duty. Beatrice owed no fiduciary duty to Karen — she was not a co-tenant, unlike Herman and Brian, and the court so found. Accordingly, liability could attach to Beatrice only if, at the time she filed the foreclosure suit, she knew Herman's conduct constituted a breach of duty and she gave substantial assistance or encouragement to this conduct.

The evidence offered in support of Karen's claim included Beatrice's knowledge of her husband's status as co-tenant with Karen and Brian in the Lincoln property; her participation in discussions with Herman and the attorney representing their interests in the events concerning the Lincoln property, including the decision not to have Herman purchase the mortgage as that would have consolidated ownership solely in the co-tenants and, as the attorney noted, "there was too much controversy regarding the co-tenants on this property to actually take this mortgage and throw it into the relationship." It was understood by Herman and Beatrice that Beatrice could have simply paid off the mortgage, rather than purchasing it. However, it was decided that she would purchase the mortgage in her name alone. She initiated the foreclosure action against Herman, Brian and Karen, while conceding that she had no idea what was owed on the mortgage and that she had never requested payment from Herman or Brian or Karen. Unless the jury believed that Beatrice was only a pawn in Herman's game, a characterization that they apparently rejected after observing Beatrice on the stand and hearing her testimony, the evidence was certainly sufficient for the jury to find that Beatrice knowingly and willingly assisted Herman in his breach of his fiduciary duty to Karen. Accordingly, we reject Beatrice's claim on this issue.

## IX. Contribution Claims

Herman claims that the court erred in ordering that his motion for contribution from Karen for the purchase of the mortgage should be decided by the New York court hearing Karen and Brian's divorce action. Beatrice claims that the court erred in denying her claim for contribution as well. As Beatrice made no claim for contribution before the trial court, we do not address her claim on appeal. However, because she acted in concert with Herman in foreclosing on the mortgage, our decision as to Herman's contribution claim is applicable to any such claim of Beatrice as well.

As noted, the court in its summary judgment decision in the mortgage foreclosure case found that Herman and Beatrice had purchased the mortgage on behalf of the remaining co-tenants, and were entitled to receive contribution from Karen and Brian. It held, however, that the amount and time for contribution should not be resolved until after Karen's cross-claims and counterclaims had been decided. Following the jury verdict, Herman moved the court to order Karen to pay one-half of the costs of the mortgage, $75,000 plus interest from the date of purchase at the rate of 12% per annum, and asked that her damage award be reduced by the amount of contribution. The court ruled that since the contribution claim relates to marital property owned as a tenancy by the entirety by Brian and Karen and was a marital debt, the issue must be decided in connection with the New York divorce case.

■■■ The court erred in concluding that simply because the claim for contribution involved a mortgage held on property owned by a married couple with a divorce pending, the claim for contribution should be resolved in the context of the divorce. We agree that a court could allocate such a debt between husband and wife during a divorce proceeding, but hold that, notwithstanding any concurrent litigation in New York to dissolve the marital bonds, the petition for contribution on the mortgage should have been considered by the Vermont court.

The case began as a mortgage foreclosure, a finding was made that contribution was owed, and the court noted it would consider a claim for contribution following resolution of Karen's claims. To treat the claim for contribution as somehow different from that of any other creditor seeking to collect a debt and requiring the debtee to enter into the fray of a divorce simply because the debt can be assigned to the

marital unit would be grossly unfair to creditors and add to the difficulties of divorce litigation.

Karen's claim that the judgment is her sole property and cannot be reached to satisfy a marital debt, see 15 V.S.A. § 66 ("All personal property and rights of action acquired by a woman before or during coverture, except by gift from her husband, shall be held to her sole and separate use."), is misplaced, as well as questionable. See generally *Med. Ctr. Hosp. of Vt. v. Lorrain*, 165 Vt. 12, 675 A.2d 1326 (1996). It misinterprets the situation at hand and analyzes the contribution claim as a setoff of her judgment award, rather than as a separate and independent action on the debt owed to Herman for his purchase of the mortgage.

It is true that, when spouses hold property as tenants by the entirety, neither spouse has a share that can be disposed of or encumbered without joinder of the other spouse. *In re Spencer*, 152 Vt. 330, 339, 566 A.2d 959, 964 (1989); see *Preston v. Chabot*, 138 Vt. 170, 177, 412 A.2d 930, 934 (1980) (Billings, J., dissenting) ("[W]here both spouses do join in an agreement respecting the property, both are bound to its consequences and cannot for their separate benefits treat the estate as divided.") (citing *Coop. Fire Ins. Ass'n v. Domina*, 137 Vt. 3, 5, 399 A.2d 502, 503 (1979)). Thus, it may be that Brian would be a necessary party to the contribution case. However, on this record, it is unclear if Herman's claim for contribution is properly directed at Karen and Brian, as we cannot determine if they continue to hold the property as tenants by the entirety. See *Preston v. Chabot*, 138 Vt. at 175, 412 A.2d at 932-33 (A divorce destroys the tenancy by the entirety and creates by operation of law a tenancy in common among the parties.). On remand, the court will have the opportunity to assess the status of the property and the respective obligations of the parties. For these reasons, we agree with Herman and remand the matter of contribution to the trial court for consideration.

*Affirmed in part; remanded in part.*