### Robert and Roberta FOSTER v. BITTERSWEET EXPERIENCE, INC. and Jeff Gehris

[796 A.2d 483]

No. 00-532

February 27, 2002. Following a jury verdict in favor of plaintiffs Robert and Roberta Foster, defendant Bittersweet Experience, Inc. appeals the verdict and the Rutland Superior Court's denial of its motion for judgment notwithstanding the verdict, or in the alternative, for a new trial. Defendant raises four arguments on appeal: (1) the trial court erred in its charge to the jury regarding the mitigation of damages, whether plaintiff Robert Foster was discharged, and whether such discharge was a result of his refusal to take a polygraph examination or some other intervening cause; (2) the special verdict forms were confusing and contrary to 21 V.S.A. § 494; (3) the verdict, with respect to money damages, was not based on sufficient evidence; and (4) the court erred in not granting its motion for judgment notwithstanding the verdict. We affirm.

The following facts are those adduced at trial, taken in the light most favorable to the plaintiff. See *Canton v. Graniteville Fire Dist. No. 4*, 171 Vt. 551, 551, 762 A.2d 808, 809 (2000) (mem.) (jury verdict sustainable if, looking at the evidence in the light most favorable to verdict winner and excluding any modifying evidence, there is evidence fairly and reasonably tending to support it).

Defendant Bittersweet Experience, Inc., the owner of "The Nightspot," a dance club in Killington, Vermont, hired plaintiff Robert Foster as a bouncer, doorman and host in 1991. Plaintiff worked the door at the club, collecting fees for entrance, screening customers for "seasons passes" to the club, and breaking up fights on the floor.

In November 1996, Jeffrey Gehris, the president and owner of Bittersweet Experience, Inc., met with plaintiff to confront him regarding rumors from fellow employees that plaintiff was stealing money from defendant's front door fees. When plaintiff denied that he was stealing, Mr. Gehris requested that plaintiff consider taking a polygraph test to "clear his name." Originally, plaintiff agreed to take a polygraph, but after speaking with an attorney, contacted Mr. Gehris to tell him that he had decided against it.

Following plaintiff's refusal to take the polygraph, the club manager reassigned plaintiff from his post as head doorman to work "on the floor." Perceiving this action to be a demotion, plaintiff became upset, broke several glasses, and confronted the club manager. The manager refused to speak with him, explaining that plaintiff was drunk and upset and that he should speak with Mr. Gehris. The following day, Mr. Gehris contacted plaintiff at home. Again, he explained that plaintiff could repair the situation by taking a polygraph, but that in the meantime, he suggested that plaintiff not come to work that evening. Plaintiff stayed home that Saturday evening, as Mr. Gehris requested, and when he reported to work on Sunday evening, he was told by the manager that he was "off the schedule" until plaintiff and Mr. Gehris had resolved the situation. Plaintiff called Mr. Gehris following his conversation with the manager. Mr. Gehris explained that plaintiff was off the schedule and again reiterated that he would like plaintiff to take a polygraph

examination and that he would be willing to pay for it.

Plaintiff filed an action against defendant alleging, inter alia, that he was unlawfully discharged as a result of his refusal to take a polygraph examination, in violation of the Vermont Polygraph Protection Act, 21 V.S.A. §§ 494-494(e). The case was tried by a jury, and the jury found in favor of plaintiff, awarding him $10,452 in economic damages. Defendant filed a motion for judgment notwithstanding the verdict or in the alternative for a new trial, and on November 6, 2000, the motion was denied.

We will not overturn a trial court's conclusions if they are reasonably supported by the findings, nor will we set aside its findings unless they are clearly erroneous. *Agency of Natural Res. v. Glens Falls Ins. Co.*, 169 Vt. 426, 432, 736 A.2d 768, 772 (1999). We will review the jury's findings "in the light most favorable to the judgment, disregarding modifying evidence," and will disturb the findings only where there is no credible evidence to support them, not merely where they are contradicted by substantial evidence. *Id.*

On appeal, defendant first argues that the trial court erroneously instructed the jury on plaintiff's duty to mitigate damages, failed to instruct the jury on whether an intervening cause might have accounted for plaintiff's dismissal, and improperly instructed the jury on plaintiff's discharge. Defendant failed to preserve each of these objections to the jury instructions during trial.

A party claiming error on an instruction to the jury may do so only where it has distinctly stated the objection, and the grounds for that objection, before the jury retires with the instructions to deliberate the case. V.R.C.P. 51(b). Defendant's counsel did make an objection to the court's failure to include a mitigation instruction explaining that the jury could deduct not only what plaintiff made during his period of lost wages, but what he could have made. The court reinstructed the jury on the issue of mitigation, subsequent to that objection, and defendant's counsel approached the bench again. However, counsel failed to renew the objection. The bench conference amounted to a discussion about the charge without defense counsel distinctly objecting to the court's new instruction; thus, he waived this issue for appeal. See *id.*

Defendant also claims that the court's failure to instruct the jury on intervening cause was error. Again, defendant has failed to preserve this objection. While defendant's counsel raised his concerns about the lack of an instruction on intervening cause at the charge conference, he failed to renew this objection after the charge was read to the jury. V.R.C.P. 51(b); see *Wood v. Wood*, 166 Vt. 608, 608, 693 A.2d 673, 674 (1997) (mem.) (objection following jury instructions necessary to preserve issue for appeal); *Bacon v. Lascelles*, 165 Vt. 214, 222, 678 A.2d 902, 907 (1996) (same). Finally, defendant claims the court failed to instruct the jury on the issue of discharge. Defendant never raised this objection to the jury instructions below, and accordingly, we will not consider it here. See V.R.C.P. 51(b) (a party must distinctly state its objection to the instructions, before the jury retires to deliberate, or it waives its right to claim error on appeal).

Defendant next argues that the trial court erred in not presenting a separate interrogatory as to whether plaintiff had in fact been discharged. Defendant contends, therefore, that the second interrogatory, which read: "[w]as the plaintiff's refusal to take a polygraph test a motivating factor in the defendant's decision not to place plaintiff on the work schedule, thus discharging him," was confusing to the jury. Defendant asserts that the question of whether plaintiff was discharged is an element of 21 V.S.A. § 494d that must be presented to the jury as the sole arbiter of the facts.

There is no merit to defendant's objection. As an element of 21 V.S.A. § 494d, plaintiff must establish that he was "discharged, disciplined or discriminated against." In this case, the evidence was uncontroverted that plaintiff was taken "off the schedule" and never put back on it. Mr. Gehris testified that plaintiff was taken off the schedule and that he told his manager, "I said these are the conditions and he's — he's out of here until he meets — until he comes in and can apologize to everybody." Moreover, the second special interrogatory placed directly before the jury the central issue of the case: whether plaintiff's refusal to take a polygraph examination was a motivating factor in defendant's decision not to place plaintiff on the work schedule. Had the jury believed defendant's theory of the case, the interrogatory could only have been answered in the negative. Once the jury determined that plaintiff's refusal to take a polygraph was a motivating factor in defendant's decision not to place plaintiff on the work schedule, the issue became one of damages in the amount of lost wages. Whether the wages were lost as a result of being taken "off the schedule" or being "discharged," defendant can make no showing of prejudice since the evidence amply supports the jury's finding that defendant's decision not to pay plaintiff was motivated by plaintiff's refusal to take a polygraph.

Next, defendant claims that its motion for judgment as a matter of law, pursuant to V.R.C.P. 50, was improperly dismissed on the grounds that defendant failed to renew the motion at the close of evidence as required by Rule 50(b). See V.R.C.P. 50(b) ("Renewal of the motion is necessary to appeal from a denial of or a failure to grant a motion for judgment as a matter of law."). Defendant argues that it properly raised the Rule 50 motion at the close of plaintiff's evidence, that the trial court recognized the motion and deferred a ruling until the close of

defendant's case and, accordingly, that defendant was not required to raise the motion again after a mere "300 seconds" of testimony.

We construe Rule 50 strictly. *Ulm v. Ford Motor Co.*, 170 Vt. 281, 284, 750 A.2d 981, 985 (2000) ("[E]ven where a motion for directed verdict was made at the end of plaintiff's case, if not renewed at the close of all evidence as required by V.R.C.P. 50(b), the issues are waived.") (internal quotations omitted). Though recently, in *Cooper v. Cooper*, 173 Vt. 1, 783 A.2d 430 (2001), we held that while Rule 50 is to be strictly construed, "we should not lose sight of the purpose of a Rule 50 motion, that is, to give the nonmoving party an opportunity to cure the defects in proof that might otherwise preclude the case from going to the jury." 173 Vt. at 11, 783 A.2d at 438-39 (citing *Maynard v. Travelers Ins. Co.*, 149 Vt. 158, 162, 540 A.2d 1032, 1034 (1987)). The best method to insure that the purposes of Rule 50 are met, and that, therefore, the nonmoving party is given adequate warning of the defects in its case, is strict enforcement of the renewal requirement, *Maynard*, 149 Vt. at 162, 540 A.2d at 1034, particularly where, as here, the nonmoving party has put on additional evidence. Moreover, defendant never challenged the sufficiency of the evidence on economic damages, even when he was setting forth Rule 50 motions at the close of his case, prior to plaintiff's rebuttal. Under the circumstances, unlike those in *Cooper*, we cannot find that the actions and efforts of defendant were sufficient to overcome strict enforcement of the renewal requirements established by *Maynard*. See *id*.

Finally, defendant argues that this Court should order a new trial because the jury's verdict was excessive and had no reasonable basis. The trial court considered defendant's motion for a new trial pursuant to Rule 59(a) and determined that the jury's award in this case was not excessive. We will affirm the trial

court determination so long as there has been no abuse of discretion. *Lockwood v. Lord,* 163 Vt. 210, 216, 657 A.2d 555, 559 (1994).

The jury heard substantial evidence of damages, which in this case consisted exclusively of lost wages.* Plaintiff reported an income of $13,042 in his 1996 tax returns and $17,330 in his 1997 tax returns. The jury heard evidence that plaintiff had worked approximately four nights a week at $100 per night, not including bonuses, and that The Nightspot had increased wages to $125 a night the season that plaintiff was discharged. Moreover, the six months lost wages that the jury was considering fell in the "ski season," when plaintiff worked one more night a week than the rest of the year, and received higher bonuses on average. The jury's finding of $15,400, mitigated by wages actually earned during those six months, for a final verdict of $10,452 is amply supported by the evidence; thus, the trial court properly denied defendant's motion for a new trial.

*Affirmed.*

Motion for reargument denied March 29, 2002.

---

* Defendant argued below that the Polygraph Protection Act provides no private remedy to plaintiff. We do not address this issue as it was not properly preserved for appellate review. We note that under *Murray v. St. Michael's College,* 164 Vt. 205, 667 A.2d 294 (1995), we recognized a private right of action for money damages can be appropriate where employers have discriminated against employees, violating public policy, and thereby creating both a public and a private wrong, "each of which is entitled to vindication." *Id.* at 210, 667 A.2d at 298.